[No. E027539. Fourth Dist., Div. Two. Sept. 18, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY JESUS VILLEGAS, Defendant and Appellant.

1218

## Counsel

Richard P. Siref, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Carl H. Horst and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WARD, J.**—The trial court found defendant and appellant Anthony Jesus Villegas guilty of attempted first degree murder (count I),[1] mayhem (willfully, unlawfully and maliciously disabling and rendering useless the legs of Richard Mercado) (count II),[2] and assault with a firearm (count III).[3] The court also found true the following enhancement allegations: (1) with regard to counts I and II, defendant personally and intentionally discharged a firearm and proximately caused great bodily injury;[4] (2) with regard to counts I, II, and III, defendant committed the offenses in association with, and for the benefit of, a criminal street gang;[5] and (3) with regard to count III, defendant personally used a firearm,[6] and he personally inflicted great bodily injury upon the victim who suffered permanent paralysis as a result.[7] The court sentenced defendant to a total prison term of 40 years to life.

On appeal, defendant contends: (1) there was insufficient evidence to support a conviction of attempted murder of Richard Mercado; (2) there was

---

[1]Penal Code sections 664 and 187. All further statutory references will be to the Penal Code, unless otherwise noted.

[2]Section 203.

[3]Section 245, subdivision (a)(2).

[4]Sections 12022.53, subdivision (d) and 1192.7, subdivision (c)(8).

[5]Section 186.22, subdivision (b)(1).

[6]Section 12022.53, subdivision (d).

[7]Section 12022.7, subdivision (b).

insufficient evidence to support a conviction of mayhem; (3) there was insufficient evidence to support the gang enhancement allegation because there was insufficient proof of the predicate offenses to establish a pattern of criminal gang activity; (4) the trial court erroneously sentenced defendant to a term of 15 years to life for the attempted murder charge; (5) defendant should have been tried and sentenced under section 12022.5, subdivision (b), rather than 12022.53, subdivision (d); and (6) defendant's sentence of 40 years to life constitutes cruel and unusual punishment. We find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

Victim Richard Mercado, associated with the Elsinore Vato Locos (E.V.L.) about three or four months before the instant offense, was involved in a fight with persons he believed to be members of a rival gang, the Elsinore Young Classics (E.Y.C.). Mercado hit Duke, defendant's friend and a suspected E.Y.C. member. Another man pulled a gun out and shot at Mercado's truck. Mercado then saw defendant walking toward him on the opposite side of the street, carrying a sawed-off shotgun. When Mercado saw defendant, he glanced at him and then left. At trial, the prosecution introduced pictures of E.Y.C. members, including defendant's photograph. In addition, Riverside County Deputy Sheriff Robert Thompson, who specialized in investigating gangs, testified that defendant was a member of E.Y.C.

On the night of the instant offenses, Mercado, Christian Cazares, and Alex Herrera drove to a motel in Mercado's truck, in order to buy marijuana. When they got to the motel, the man selling marijuana told them to come back later. They went to Cazares's house and waited for a while. They returned to the motel, but Mercado did not see anyone in the parking lot. When Mercado started driving away, he saw defendant and another person standing on the sidewalk. Defendant saw Mercado, "threw his fingers up" and said, "E.Y.C." Mercado took that sign as a threat. Mercado decided to get out of his truck and go fight defendant because he thought defendant was going to throw something at his truck. Mercado opened the door and began to step out. He saw defendant pull something shiny out of his pants; Mercado, fearing that defendant had a weapon hastily reentered the truck and slammed the door. Defendant shot at the truck at least six times. Mercado heard bullets hitting his truck and then felt the window shatter. Suddenly Mercado could not move his legs. He asked his friends to take him to the hospital.

Mercado spent four months in the hospital. Police showed Mercado two photographic lineups. Mercado identified defendant's picture in the second lineup. As a result of the shooting, Mercado was paralyzed.

Defendant was arrested. Riverside County District Attorney's Office Investigator Robert Creed interviewed defendant on videotape, and defendant admitted shooting Mercado.

Defendant waived his right to a jury trial. The trial court found him guilty on all counts and found true the enhancement allegations. Defendant now appeals.

## ANALYSIS

### I. There Was Sufficient Evidence to Support the Attempted First Degree Murder Conviction

Defendant claims that there was insufficient evidence of premeditation and deliberation to support the attempted first degree murder conviction. Specifically, defendant argues that there was no evidence of planning activity, motive, or "preconceived design in order to take Mercado's life." He also argues that there was no evidence of malice. Neither contention is meritorious.

### A. Standard of Review

■ "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]"[8]

### B. There Was Sufficient Evidence to Support the Attempted First Degree Murder Conviction

■ Like first degree murder, attempted first degree murder requires a finding of premeditation and deliberation.[9] "[T]he test on appeal is whether a rational trier of fact could have found premeditation and deliberation beyond a reasonable doubt based upon the evidence presented."[10] The three categories of evidence for a reviewing court to consider with respect to premeditation and deliberation are: (1) prior planning activity; (2) motive;

---

[8]*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].
[9]*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, footnote 8 [83 Cal.Rptr.2d 307].
[10]*People v. Francisco* (1994) 22 Cal.App.4th 1180, 1191 [27 Cal.Rptr.2d 695].

and (3) the manner of killing.[11] "The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .' [Citations.]"[12]

██ Here, a rational trier of fact could conclude from the evidence that before shooting Mercado, defendant had decided to take Mercado's life. As to prior planning activity, defendant was carrying a loaded gun with him at the time of the incident. Furthermore, in his interview with the police, defendant stated that he recognized Mercado's truck from the previous altercation. Mercado testified that when he first saw defendant, defendant stood there, "threw his signs," and said, "E.Y.C." Mercado took this conduct as a threat because defendant's friends had, in the past, driven by Mercado's house, saying "E.Y.C.," and had thrown rocks at his truck. A rational trier of fact could also infer that defendant held something against Mercado because of the earlier fight with E.Y.C. members. Defendant need not have planned to kill Mercado before he saw him on the day of the incident; once he recognized Mercado, defendant threw his gang sign and yelled his gang name before he opened fire on Mercado's truck. This conduct clearly shows that defendant thought before he acted.

Moreover, there was evidence of motive. The rival gangs involved were enemies. Officer Thompson testified that there has been an ongoing feud between E.Y.C. and E.V.L. since the early 1990's, with fights and shootings between the members. He opined that the current shooting was committed to benefit or promote E.Y.C., judging from the fired rounds. Thompson further testified that committing a crime to benefit the gang "would create the fear into the other gang that [E.Y.C.] [was] not to be reckoned with" [sic] and that in a small town like Lake Elsinore, word of mouth about this crime would travel fast. Thompson also testified that, even if Mercado was not affiliated with another gang, the shooting nonetheless promoted E.Y.C.; the purpose of that gang was "to spread intimidation among all people in that area." The other obvious motive was retaliation for Mercado's previous fight with Duke.

The manner of the attempted killing also indicated a clear intent to kill. Defendant fired at least six shots from a distance of about twenty-five feet. All six shots were directed at the occupants of the truck. Two of the shots were directly at the driver's side door, one was directed at the truck bed, one was near the driver's side window, and two were in the back window of the

---

[11]*People v. Herrera, supra*, 70 Cal.App.4th 1456, 1462.
[12]*People v. Mayfield* (1997) 14 Cal.4th 668, 767 [60 Cal.Rptr.2d 1, 928 P.2d 485].

cab. Evidence of a defendant's intent "must usually be derived from all the circumstances of the attempt, including the defendant's actions. [Citation.] The act of firing toward a victim at a close, but not point blank, range 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . .' [Citation.]"[13]

Defendant repeatedly argues that Mercado was the "initial physical aggressor" since he turned his truck around to go back to where defendant was standing to confront defendant. However, the evidence does not show that Mercado provoked defendant to shoot him.

Viewing the evidence in the light most favorable to the judgment, there was sufficient evidence from which the trial court could find that defendant harbored the requisite intent necessary to support his conviction for attempted murder.

## C. *There Was Evidence of Malice*

■ Defendant argues that the evidence only showed that he was guilty of the lesser crime of attempted voluntary manslaughter, because malice was negated by both a heat of passion and an honest, but unreasonable belief in the need for self-defense. We disagree.

"The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation] or be conduct reasonably believed by the defendant to have been engaged in by the victim. [Citations.] The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection."[14] Here, defendant claims that Mercado provoked him by making a U-turn to stop near defendant, and by starting to alight from his truck. An ordinary person would not act rashly in response to this conduct.

Defendant claims that he believed that Mercado was "going for a weapon." However, Christian Cazares, who was in the truck with Mercado at the time of the shooting, testified that there was no gun in the truck at that time. Mercado also testified that he had no weapons in the truck. He further testified that prior to the shooting, he did not do anything with his hands to make it look like he had a weapon. He had merely started to step out of the

---

[13]*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690 [60 Cal.Rptr.2d 761].
[14]*People v. Lee* (1999) 20 Cal.4th 47, 59 [82 Cal.Rptr.2d 625, 971 P.2d 1001].

truck, placing one foot on the ground, when defendant started shooting. The evidence does not support either a heat of passion defense or a claim of unreasonable self-defense. The evidence to which defendant points does not negate malice. Accordingly, the trial court properly convicted defendant of attempted first degree murder.

## II. *There Was Sufficient Evidence to Support Defendant's Mayhem Conviction*

■ Defendant argues that there was insufficient evidence to support a conviction of mayhem. Specifically, he argues that "[s]hooting at an individual in a manner in which the shooter does not realize would cause paralysis cannot be mayhem as that crime had been defined under case law." Defendant claims that he did not act maliciously and that he was not "aware" that Mercado would be paralyzed. He also claims that he acted in self-defense.

Section 203 provides that "[e]very person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

"Mayhem, unlike murder, is a general intent crime. [Citations.] The necessary intent for mayhem is inferable from the types of injuries resulting from intentional acts. [Citations.] Thus, the crime is mayhem if the blow results in putting out the eye even if the person who unlawfully strikes another does not have the specific intent to commit the offense. [Citations.]"[15] "California's definition of the crime of mayhem has never included a malice aforethought requirement, nor have the various statutory formulations inferentially or directly suggested that an actual but unreasonable belief in the need of self-defense mitigates the offense."[16]

Here, defendant intentionally opened fire directly at Mercado's truck, knowing that Mercado was sitting on the side of the truck nearest to defendant. Firing a gun at someone at close range, which results in the victim being paralyzed, is sufficient to constitute mayhem. Defendant's apprehension of the precise effect of his shots, i.e., his specific "awareness" that Mercado would become paralyzed, is irrelevant.

The trial court properly convicted defendant of mayhem.

---

[15]*People v. Sekona* (1994) 27 Cal.App.4th 443, 453 [32 Cal.Rptr.2d 606].
[16]*People v. Sekona, supra,* 27 Cal.App.4th 443, 453.

### III. *There Was Sufficient Evidence to Support the Gang Enhancement Allegation*

Defendant argues that there was insufficient evidence to support the gang enhancement allegation because there the prosecution failed to introduce documentary evidence to support its establishment of "a pattern of gang activity."

Section 186.22, subdivision (b)(1) provides that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of two, three, or four years at the court's discretion . . . ."

To subject a defendant to the penal consequences of section 186.22, "the prosecution must prove that the crime for which the defendant was convicted had been 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' [Citation.] In addition, the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting *two or more* of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period. [Citation.]"[17]

Here, the prosecution presented the testimony of two gang experts, Officers Robert Thompson and Jesus Orona. They testified concerning E.V.C., its documented membership, and defendant's association with the gang. The two required predicate offenses included the current offense[18] and an attempted murder that occurred in March of 1997. Defendant's brother, with two other E.Y.C. members, Juan Fiero, and Miguel Flores committed the 1997 offense. Officer Thompson, who investigated that case, testified that both Fiero and Flores were members of E.Y.C. at the time of the attempted murder, and that they were both convicted and sentenced to state prison for that offense.

---

[17]*People v. Gardeley* (1996) 14 Cal.4th 605, 616-617 [59 Cal.Rptr.2d 356, 927 P.2d 713], italics in original.

[18]*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1383 [37 Cal.Rptr.2d 596].

Defendant argues that the officers' hearsay testimony was not competent evidence to show the existence of the predicate offense. Defendant asserts that there was no documentary evidence introduced to support the predicate offense. However, the record shows that, at the beginning of the trial, the prosecution asked the trial court to take judicial notice of a case file (case No. RIF73611) to prove the predicate offense. The court did not have that file, but ordered it delivered the next day. At the end of the trial, when the court asked if there was any further evidence concerning the gang enhancement, the prosecutor stated: "I believe the Court has already taken judicial notice of Case Number RIF73611 in regards to the predicate crime for the gang allegation . . . ." The court did not disagree, and it went on to ask about some other evidence. Defense counsel did not object.

In *People v. Olguin*,[19] the appellate court upheld a true finding of the section 186.22 gang allegation, based upon the officer's expert oral testimony.[20]

Similarly, the predicate offense here was sufficiently established, both by oral testimony and documentary evidence. The trial court properly imposed the gang enhancement, pursuant to section 186.22, subdivision (b)(4).

## IV. *The Trial Court Properly Sentenced Defendant*

*The Trial Court Properly Imposed a 15-Year-to-Life Sentence Pursuant to Section 186.22, Subdivision (b)*

Defendant's total sentence was 40 years to life. Defendant argues that the trial court erroneously imposed a 15-year-to-life sentence, for the gang enhancement allegation under section 186.22, subdivision (b). ■ Specifically, defendant argues that the court treated the sentencing prescription for the gang allegation in section 186.22, subdivision (b)(5), as a sentence *enhancement* by improperly adding a 15-year-to-life sentence to defendant's life term and consecutive 25-year-to-life term for the gun use enhancement. We find no error.

First, defendant was convicted of attempted premeditated and deliberate murder.[21] Section 664, subdivision (a) provides that "if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole." Thus, the court imposed a sentence of life with the possibility of parole for the attempted murder conviction.

---

[19]*People v. Olguin, supra*, 31 Cal.App.4th 1355, 1385.
[20]*People v. Olguin, supra*, 31 Cal.App.4th 1355, 1385.
[21]Sections 664 and 187.

Next, the trial court found true the allegation that defendant committed the crime "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."[22] Section 186.22, subdivision (b)(5)[23] provides that ". . . any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." Here, defendant was convicted of attempted murder, which was punishable by a life sentence. Thus, the trial court correctly set defendant's penalty at life with a minimum parole eligibility of 15 years.

Finally, the trial court found true the enhancement allegation that defendant "intentionally and personally discharged a firearm and proximately caused great bodily injury." Pursuant to section 12022.53, subdivision (d), defendant must be "punished by a term of imprisonment of 25 years to life in the state prison, which shall be imposed *in addition and consecutive* to the punishment prescribed for that felony." (Italics added.) Thus, the trial court added the 25-year-to-life sentence to defendant's sentence of 15 years to life, for a total sentence of 40 years to life. The sentences for counts II and III were imposed concurrently.

## V. *Defendant Was Properly Charged with a Section 12022.53 Enhancement*

Defendant contends that he should have been charged, and his sentence should have been enhanced, pursuant to section 12022.5, rather than section 12022.53, because section 12022.5 is the more specific statute.

"It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. [Citations.] This prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from ' "the complex considerations necessary for the effective and efficient administration of law enforcement." ' [Citations.]"[24] Moreover, "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."[25]

Therefore, the decision whether to allege an enhancement pursuant to section 12022.5 or 12022.53 was within the exclusive province of the

---

[22]Section 186.22, subdivision (b)(1).

[23]Formerly subdivision (b)(4).

[24]*People v. Birks* (1998) 19 Cal.4th 108, 134 [77 Cal.Rptr.2d 848, 960 P.2d 1073].

[25]*United States v. Batchelder* (1979) 442 U.S. 114, 123-124 [99 S.Ct. 2198, 2204, 60 L.Ed.2d 755].

prosecution. Defendant did not have the option to select the charges to be brought against him. Defendant has made no allegations that the charges discriminated against him. Thus, there was no error.

## VI. *Defendant's Sentence Did Not Constitute Cruel and Unusual Punishment*

Defendant next argues that his sentence of 40 years to life constitutes cruel and unusual punishment in violation of the California and federal Constitutions. He sets forth the three-prong analysis as stated in *In re Lynch*[26] which examines "(1) the nature of the offense and/or the offender; (2) the challenged punishment compared to punishments imposed for more serious offenses in the same jurisdiction; and (3) the challenged punishment compared to punishments imposed for the same offense in other jurisdictions."[27] Defendant only argues the first two prongs of the *Lynch* analysis; accordingly, we address only those issues.

First, defendant argues that his punishment is disproportionate to his culpability, considering the nature of the offense and the offender. He argues that he did not seek out the victim in order to shoot him, but rather, the victim came to the area where he was. He also argues that Mercado first started to get out of his car to assault him, that defendant believed Mercado was searching for a weapon, and that it was only at that point that defendant fired at the truck. Furthermore, defendant was only 17 at the time, and had no prior convictions for any serious violent crimes.

That Mercado independently traveled to a location where defendant also happened to be is irrelevant. Defendant carried a loaded weapon. Mercado and Cazares both testified that there were no weapons in the truck. Furthermore, the record shows that defendant recognized Mercado from the altercation a few months earlier, and escalated the situation by issuing standard gang challenges, throwing his gang signs and yelling his gang's name. When Mercado responded, taking one step out of his truck, defendant opened fire. Defendant's actions were premeditated, callous, unprovoked and violent.

Moreover, "[a]lthough the evidence is uncontradicted that appellant had no significant prior criminal record, this is not determinative."[28] The evidence shows that he was a member of a criminal street gang, the primary purpose of which was to commit acts of violence in order to intimidate the community and other gangs. Thus, defendant may not have had formal convictions; however, it is reasonable to infer that he was an active gang member, and personally subscribed to its criminal purposes.

[26]*In re Lynch* (1972) 8 Cal.3d 410, 425-427 [105 Cal.Rptr. 217, 503 P.2d 921].
[27]*People v. Cline* (1998) 60 Cal.App.4th 1327, 1337 [71 Cal.Rptr.2d 41].
[28]*People v. Martinez* (1999) 76 Cal.App.4th 489, 497 [90 Cal.Rptr.2d 517].

We conclude the record does not show that the statutory punishment is grossly disproportionate in light of the nature of the offense and the nature of the offender.

Second, defendant argues that his punishment was disproportionate when compared to punishments in California for other more serious crimes. Specifically, he argues that someone convicted of first or second degree murder, but who is not subject to a section 12022.53 gun use enhancement, would serve less time. ▆▆▆ However, "the Legislature determined in enacting section 12022.53 that the use of firearms in commission of the designated felonies is such a danger that, 'substantially longer prison sentences must be imposed . . . in order to protect our citizens and to deter violent crime.' The ease with which a victim of one of the enumerated felonies could be killed or injured if a firearm is involved clearly supports a legislative distinction treating firearm offenses more harshly than the same crimes committed by other means, in order to deter the use of firearms and save lives."[29] The distinction is rational. Defendant's deliberate use of a firearm could easily have killed Mercado, instead of paralyzing him. His good fortune that Mercado happened to survive his attack does not obviate the distinction between a violent crime committed by use of a firearm, and one committed by other means.

Defendant's sentence did not constitute cruel and unusual punishment.

DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2001.

---

[29]*People v. Martinez, supra*, 76 Cal.App.4th 489, 497-498.