Filed 5/29/13  P. v. Marshall CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B239874 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA365596) |
| SAMMY MARSHALL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William C. Ryan, Judge.  Affirmed.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Sonya Roth, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Sammy Marshall (defendant) appeals from the judgment entered after a jury convicted him of attempted first degree murder, in violation of Penal Code[1] sections 664 and 187, subdivision (a) (count 1) and second degree robbery in violation of section 211 (count 2). The jury found as to both counts that defendant had personally used a firearm, within the meaning of section 12022.53, subdivision (b), and that he personally discharged that firearm within the meaning of section 12022.53, subdivision (c).

After the jury returned its verdicts, a court trial was held on allegations that defendant had suffered two prior strike convictions within the meaning of section 1170.12, subdivisions (a) through (d) and section 667, subdivisions (b) through (i). The trial court found the prior conviction allegations to be true and sentenced defendant to 67 years to life in state prison on count 1 (consisting of 37 years to life, plus 20 years for the firearm enhancement and 10 years pursuant to section 667, subdivision (a)). The court imposed the same sentence for count 2, but stayed the sentence pursuant to section 654. Defendant was accorded 936 days of presentence custody credit.

Defendant contends there was insufficient evidence of premeditation and deliberation to support his attempted murder conviction. Substantial evidence supports the conviction, and we therefore affirm the judgment.

## BACKGROUND

Jose Guadalupe Ayala (Ayala) was working as the night watchman at Roscoe's Chicken and Waffles on Pico Boulevard in Los Angeles on February 9, 2009. At approximately 3:30 a.m., he opened the side door of the restaurant and was confronted by an armed man waiting for him. The man placed a gun to Ayala's forehead, kicked Ayala, pushed him to the floor, and then beat him. Ayala could not see the man's face, which was covered by a mask, but he could see that the man was African-American. While Ayala was lying on the ground, the man took Ayala's watch, cell phone, and necklaces.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The assailant then insisted that Ayala open the door to the restaurant office, which was locked. Ayala did not have the key to the office, but told the man he would get the key. Ayala began walking backward into the restaurant. The man followed Ayala closely, keeping the gun to Ayala's forehead. Ayala backed into the kitchen, grabbed a nearby knife, feinted to stab the man with it, and then kicked the man, who fell to the ground. While lying on the ground approximately two or three feet away from Ayala, the man pointed the gun at Ayala's chest and fired. Ayala both saw and heard the explosion from the gun as it was being discharged, but he was not hit by a bullet. The man then attempted to shoot Ayala again by repeatedly pulling the trigger, but the gun did not fire because it had become jammed. When Ayala realized that the gun had jammed, he threw himself on top of the gunman and wrested the gun away from him. During the struggle, Ayala cut his finger on the gun.

After disarming the intruder, Ayala attempted to take him out to the parking lot. When they left the restaurant, the intruder grabbed hold of Ayala and would not let go. Ayala then struck the intruder with the gun Ayala had seized from the man, and the intruder released him. Ayala went back inside the restaurant and locked the door. From inside the restaurant, Ayala saw the man remove and discard the mask he had been wearing, but Ayala was not able to see the man's face. Ayala kept the gun and remained inside the restaurant until the morning employees arrived for work. He was unable to telephone the police because the intruder had taken his cell phone and the restaurant phone could not make outgoing calls.

When the first employee, Pedro, arrived at 5:45 a.m., Ayala and Pedro went outside and recovered the mask left by the intruder. At the trial, Ayala identified the mask and a silver .22-caliber pistol he had taken from the intruder.

David Daviston, the restaurant shift leader, arrived at 8:00 a.m. on February 9, 2009. After one of his employees informed him of the robbery, Daviston checked the restaurant security camera, which had recorded video of the robbery, and telephoned the police.

3

Los Angeles Police Department (LAPD) Officer Bobby Hammers and his partner arrived at the restaurant in the afternoon of February 9, 2009. They viewed the surveillance video of the robbery, ascertained that a shot had been fired inside the restaurant, and searched for a bullet, but could not locate one. The officers recovered a shirt, a gun, and a mask from the restaurant office. Officer Hammers saw that the gun was jammed from a misfire. He bagged the gun and each of the recovered items separately and booked them into evidence.

LAPD Detective Paul Funicello received the evidence from Officer Hammers. Detective Funicello examined the gun recovered from the crime scene and observed that the gun was jammed. The gun contained one spent casing and five live rounds. Two days after the robbery, Detective Funicello interviewed Ayala and obtained a DNA sample from him.

LAPD criminalist Angela Zdanowski conducted a DNA analysis in October 2009 on the evidence booked in the case. She found the blood on the gun belonged to Ayala. Zdanowski found DNA from an unknown profile in 15 different places on the mask. She entered the unknown profile into the state DNA database, which returned a match.

On December 1, 2009, LAPD Detective Joe Anaya received notice that the DNA from the crime scene matched defendant's DNA in the state database. Defendant was arrested on December 8, 2009, and Detective Anaya obtained a DNA sample from defendant that day and submitted it for analysis.

In January 2010, criminalist Zdanowski received defendant's DNA sample and found it to be a match for the unknown profile found on the mask.

## DISCUSSION

### I. Standard of review

"'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Bolden* (2002) 29 Cal.4th 515, 553, quoting *People v.*

4

*Kipp* (2001) 26 Cal.4th 1100, 1128.)  The reviewing court must draw all reasonable inferences in support of the judgment.  (*People v. Wader* (1993) 5 Cal.4th 610, 640.)  Reversal is not warranted unless it appears that "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citation.]"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

## II.  Sufficiency of the evidence

Defendant was charged with attempted murder that was premeditated and deliberate, which required a finding of premeditation and deliberation.  (*People v. Villegas* (2001) 92 Cal.App.4th 1217, 1223.)  "'"Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance. . . .'  [Citation.]"  (*People v. Young* (2005) 34 Cal.4th 1149, 1182.)  "The three categories of evidence for a reviewing court to consider with respect to premeditation and deliberation are:  (1) prior planning activity; (2) motive; and (3) the manner of killing.  'The process of premeditation and deliberation does not require any extended period of time.  "The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ."  [Citations.]'"  (*People v. Villegas, supra*, at pp. 1223-1224, fns. omitted.)

There is substantial evidence in the record to support the jury's finding that the attempted murder was deliberate and premeditated.  Defendant waited outside the side door of the restaurant for Ayala with a loaded gun.  Defendant's act of arming himself with a loaded weapon is evidence of planning consistent with a finding of premeditation and deliberation.  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1081-1082.)  The method of the shooting was also evidence of premeditation and deliberation.  After Ayala resisted and knocked defendant to the ground, defendant aimed the gun at Ayala's chest and fired from close range -- a distance of only two to three feet away.  A shooting at close range may establish premeditation and deliberation.  (*People v. Vorise* (1999) 72 Cal.App.4th 312, 318, 319; *People v. Bolin, supra*, 18 Cal.4th at pp. 332-333; *People v. Martinez* (2003) 113 Cal.App.4th 400, 412-413.)  Defendant argues there is no evidence that he

planned to commit a murder when he entered Roscoe's and that he reacted reflexively by firing the gun in order to protect himself after Ayala forced him to the ground. Even where the assailant did not initially plan the fatal encounter with the victim, however, the assailant's use of a firearm against an unarmed person may show sufficient deliberation to support a verdict of first degree murder. (*People v. Bolin, supra*, at pp. 332-333.) Similarly, firing at the victim's upper body may establish preconceived deliberation. (*Ibid*.; *People v. Thomas* (1992) 2 Cal.4th 489, 517-518.) Here, defendant not only aimed his gun at Ayala's chest, he continued to pull the trigger after the first shot went astray. From this evidence, a rational jury could have found that defendant acted deliberately and with premeditation in attempting to kill Ayala.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS


_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6