Filed 2/4/16  P. v. Salas CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B258518 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA075242) |
| v. | |
| ANDREW JOSHUA SALAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Hayden A. Zacky, Judge.  Affirmed.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Andrew Joshua Salas appeals from the judgment following a jury trial in which he was convicted of first degree murder (Pen. Code, § 187, subd. (a); count 1),[1] three counts of attempted willful, deliberate and premeditated murder (attempted murder; §§ 664/187, subd. (a); counts 2-4), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 6).[2] The jury found true the allegations that, as to count 1, defendant personally and intentionally discharged a firearm causing great bodily injury or death (GBI/Death) (§ 12022.53, subd. (d)); as to counts 1 through 4, defendant personally used and intentionally discharged a firearm (§ 12022.53, subds. (b) & (c)) and a principal personally and intentionally discharged a firearm causing GBI/Death (§ 12022.53, subd. (d)); and, as to all counts, the criminal street gang enhancements (§ 186.22, subd. (b)(1)(C)). On each of counts 2 through 4, the jury found not true the allegation defendant personally and intentionally discharged a firearm causing GBI/Death (§12022.53, subd. (d)). He was sentenced to prison on count 1 to 25 years to life, plus a consecutive 25 years to life for the GBI/Death firearm enhancement. On each of counts 2 through 4, the trial court imposed a consecutive sentence of life in state prison, plus a consecutive 25 years to life for the GBI/Death firearm (discharge by principal) enhancement. On count 6, the court imposed the three-year upper term, plus four years for the gang enhancement.

Defendant contends the evidence of specific intent to kill is insufficient to support his conviction for the attempted murder of Catarina Strickler charged in count 4. He contends the jury necessarily found Oscar Pantoja was the one who shot Strickler, because the jury found true, as to count 4, the allegation that a principal discharged a firearm causing her great bodily injury but found not true the allegation defendant personally discharged a firearm causing such injury. He further contends not only is the

---

[1]    All further section references are to the Penal Code.

[2]    In the original information, count 5 was possession of a firearm by a felon (§ 29800, subd. (a)(1)), which was against a different defendant. Count 5 was not in the operative information, because that person was no longer named as a defendant.

evidence insufficient to establish defendant was the actual shooter, the evidence also is insufficient to establish he was an aider and abettor, because there was no evidence Pantoja, who did not know Strickler was in the car, intended to kill her.

We affirm the judgment. Defendant does not challenge the sufficiency of the evidence supporting his conviction for the first degree murder of Louis Villegas (count 1), the attempted murder of Thomas Pineda (count 2), or the attempted murder of Jocelyn Solano (count 3). His conviction for the attempted murder of Strickler (count 4) arose from the same shooting incident as counts 1 through 3. Defendant shot and killed Villegas and wounded Pineda after they exited their car and had their hands in the air. Afterward, defendant went over to their car where Solano and Strickler remained inside. Substantial evidence establishes immediately after shooting Solano, defendant shot Strickler. Substantial evidence also was presented from which the jury was entitled to infer defendant shot to kill both Solano and Strickler, because they were eyewitnesses to the shooting of Villegas and Pineda.

## BACKGROUND

The underlying shooting incident was intended to put an end to an internal dispute within the North Hollywood Boyz gang. Defendant, Pantoja, Villegas, and Pineda were members of the North Hollywood Boyz gang. Their respective gang monikers were: Scrappy; Shadow; Sinner; and Smiley. Solano, Villegas's girlfriend, and Strickler, her friend, were associated with members of the gang but were not themselves members.

On the night of September 25, 2012, Pineda, Solano, Strickler, and Villegas went out to celebrate, because Villegas was about to get off parole and he had just received his driver's license and bought a gold Lexus. While at a bar, Villegas received a phone call. Afterward, he told Pineda that Pantoja "wanted to meet up and take care of an issue man to man," meaning the "disrespecting [of] each other's families." Pineda thought they would meet, "fight it out [with fists,] and . . . go each other's ways." He was not armed and believed Villegas was not.

Just before midnight, Villegas parked his Lexus near the intersection of Balboa and Parthenia. Solano was in the front passenger seat while Strickler was in the rear seat

3

behind Villegas and Pineda also was in the rear passenger seat. Defendant and Pantoja,[3] his "homie,"[4] exited their black car, which was stopped nearby, and walked towards the Lexus.[5] Villegas and Pineda exited and walked toward them.

Defendant pulled out a small semiautomatic gun and Pantoja pulled out a revolver. Pineda and Villegas put up their empty hands. As shots were fired, defendant and Pantoja each said "fuck you." Pineda saw two or three muzzle flashes, at least one from each gun. While running back to the Lexus, Pineda was shot in the upper right thigh area and fell to the ground. He sustained a gunshot wound to his back just above his right buttock and the bullet exited through his right hip joint, which was shattered. He had the hip joint replaced, needed a splint to walk, and sustained nerve damage. Villegas was fatally shot.

Solano and Strickler had remained in the Lexus during the shooting of Pineda and Villegas. Afterward, Strickler saw defendant holding a black handgun approach and stand in front of the passenger side window. He pointed the gun at Solano and shot her before taking a step over and shooting at Strickler. Defendant and Pantoja then drove off in their car.

Solano sustained two gunshot wounds. One was a through and through shot to her right forearm. The other bullet entered her left breast and exited her left armpit. Strickler saw defendant shoot in her direction once. She was shot two times. She sustained a gunshot wound to her abdomen. Also, her stomach was grazed, and she suffered a superficial wound to her leg. Following five surgeries, she could no longer have children. She damaged her teeth from being on life support and developed posttraumatic stress disorder.

---

[3] Although Pantoja was named as a defendant in the original information, he was not so named in the operative third amended information.

[4] "Homey," also "homie," is gang slang for a friend.

[5] Pineda noted a third person, the driver, remained in the black car.

4

## DISCUSSION

Defendant contends the evidence is insufficient to establish he shot to kill Strickler or that Pantoja entertained the intent to kill her, which is necessary to support a conviction on an aider and abettor theory. We disagree. Substantial evidence exists that defendant shot at Strickler with the intent to kill in order to rid himself of an eyewitness to his murder of Villegas and attempted murder of Pineda.[6]

### a. *Standard of Review*

"Regarding a specific intent element of a crime, [our Supreme Court has] explained that '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.] Moreover, the standard of review that applies to insufficient evidence claims involving circumstantial evidence is the same as the standard of review that applies to claims involving direct evidence. 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" [Citation.] "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [ Citations.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Further, "[a] reviewing court may not reappraise the credibility of witnesses and reweigh the evidence. [Citations.]" (*People v. De Paula* (1954) 43 Cal.2d 643, 649.)

---

[6] This disposition obviates the need to discuss defendant's alternative position that the absence of intent to kill on the part of Pantoja dooms defendant's count 4 conviction for the attempted murder of Sticker on an aider and abettor theory.

**b.** *Substantial Evidence Defendant Shot to Kill Strickler*

The evidence is substantial that defendant shot Strickler. The "GPS" tracking device defendant wore because he was on parole placed him at the scene at the time of the shooting incident. In a police interview, defendant admitted he was at the scene and exited the car with Pantoja. He knew Pantoja had a problem with Pineda, who had "trashed . . . his baby girl." "[F]amily [is] off limits." Pantoja told defendant that he wanted to "fuck that fool up." In a recorded jailhouse call, defendant told Rachel Cordero, his girlfriend, he had been charged with murder and that Pantoja had talked about him and the shooting on Facebook. He added, "there's only one other person with that fool [Pantoja]. It was me, mama."

At the August 2013 preliminary hearing, Strickler began crying as defendant was being led into the courtroom. She recognized a neck tattoo as the one on the back of his neck she observed as he walked back to his car after shooting her. Strickler identified defendant as the shooter both at that hearing and at trial.[7]

The evidence also is substantial that defendant shot with the intent to kill Stickler. Intent to kill is a reasonable inference based on his firing at her at close range. (*People v. Smith* (2005) 37 Cal.4th 733, 741; *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224-1225.) Additionally, defendant had an overwhelming incentive to kill Strickler and Solano. No evidence was presented that defendant or Pantoja had a personal motive, such as animosity, against Stickler of Solano. The evidence that Solano and Sticker were eyewitnesses to defendant's murder of Villegas and attempted murder of Pineda, however, reveals an extremely powerful motive that explains defendant's attempted

---

[7] Defendant's booking photograph revealed no neck tattoos. This fact does not render Stickler's identification inherently impossible. Rather, it was simply one factor for the jury to consider in assessing the accuracy of Strickler's identification. Evidence also was presented that defendant had North Hollywood Boyz tattoos, including "NH" on the top of his head. The jury was entitled to infer Stickler simply misremembered the location of the tattoo as being on his neck rather than his head, a minor discrepancy. Her inability to identify defendant in a photographic lineup also is a matter for the jury to assess.

murder of Solano and immediately afterward his shooting of Sticker.  In short, defendant believed he literally would get away with the murder, and attempted murder, in the absence of these eyewitnesses.

Lastly, contrary to defendant's claim, the jury's findings on the firearm enhancement allegations on count 4 are inconsequential on the intent to kill Strickler issue.  Strickler was shot twice.  She was shot in her abdomen and sustained a stomach grazing.  She also sustained a superficial wound to a leg.[8]  That the jury found not true the allegation defendant personally discharged a firearm causing GBI/Death does not compel the conclusion defendant did not intend to kill Strickler when he shot at her.  Rather, the inference to be drawn is that he was a poor shooter.  Similarly, the true finding on the allegation a principal discharged a firearm causing GBI/Death simply signifies the jury found Pantoja fired the shot into Strickler's abdomen and does not serve to negate defendant shot with the intent to kill Strickler.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

---

[8]     The firearm expert opined both a semiautomatic handgun and a revolver were used.  The six 9-millimeter casings recovered from the scene were all fired from the same gun.  Four of the six projectiles also recovered were all fired from the same gun, but it could not be determined whether that gun was the same one that ejected the six casings.

7