Filed 12/8/20  P. v. Rodriguez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G057841 |
| v. | (Super. Ct. No. 09CF3083) |
| FRANCISCO ALBERTO RODRIGUEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  (Retired Judge of the Orange Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part, reversed in part, and remanded with instructions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

\*   \*   \*

A jury convicted Francisco Alberto Rodriguez of attempted premeditated murder, burglary, robbery, street terrorism, and firearm possession. The jury also returned true findings on associated weapon and street gang allegations. The court sentenced him to an aggregate term of 14 years, eight months plus 15 years to life. On appeal, Rodriguez maintains the court abused its discretion when it denied his motion for new trial based on ineffective assistance of counsel. He also raises a sentencing issue, which the Attorney General concedes. We conclude the first contention lacks merit but agree with the parties the abstract of judgment must be corrected to reflect the correct sentence on the attempted murder conviction. In all other respects, we affirm the judgment.

FACTS

Rodriguez's primary argument concerns issues raised in his new trial motion. Accordingly, we limit our factual summary to focus on those claims.

The underlying convictions were based on evidence that on December 6, 2009, Rodriguez and his uncle, Jesus Mejia, broke into a garage and were attempting to steal stereo equipment from a car when the owners (Husband and Wife) confronted them. Rodriguez was inside the car and told Husband not to move. He then pointed a gun at Husband. The gun was described as a black rifle or shotgun, not a handgun, 14 to 15 inches long. Mejia pointed a handgun at Wife while she was speaking with a 911 emergency operator. Rodriguez pointed his rifle at Husband and pulled the trigger three times, but the gun appeared to jam. Both Husband and Wife testified as to having observed Rodriguez's finger on the trigger of the rifle or shotgun attempting to pull the trigger and the gun jamming. Each time the weapon did not fire, it made Rodriguez

2

angry, and he shook the rifle. When Rodriguez and Mejia heard sirens, they fled the scene and drove away in a black Toyota after Rodriguez threw his shotgun into the trunk of the car.

Rodriguez and Mejia were charged and were to be tried as codefendants. However, before the trial scheduled for August 2015, Rodriguez's counsel was unexpectedly hospitalized. The court severed Rodriguez's case and Mejia proceeded to trial.[1]

A jury considered Rodriguez's case in February 2017. In his defense, a gang expert testified there were several reasons why the crime was not gang related. Rodriguez testified and admitted he was involved in the incident with Mejia, his uncle. He testified that on the night of the incident he was under the influence of methamphetamine and driving around with Mejia trying to buy drugs. He randomly opened the garage and saw the victim's vehicle. Rodriguez stated he broke the car's window and tried to take the stereo while Mejia waited outside. Rodriguez claimed that when Husband opened the garage door and walked inside, he pointed a black rifle BB gun at him. Rodriguez stated he kept the gun moving so Husband would not get a good look at it and realize it was a toy gun. He denied having his finger on the trigger or shooting the gun. He asserted Mejia was also carrying a toy handgun. Rodriguez claimed the crime was not committed for a gang, but rather because he needed money to buy methamphetamine.

The jury returned guilty verdicts for all five counts and found true all the special allegations. The court sentenced him to an aggregate term of 14 years, eight

---

[1] A jury convicted Mejia of all the charged offenses, and this court reversed the premeditated and deliberation special finding after concluding the court improperly instructed the jury on premediated attempted murder under the natural and probable consequences doctrine. (*People v. Mejia* (2019) 40 Cal.App.5th 42.)

months plus 15 years to life.[2]  The following month, defense counsel filed a declaration asking the court to be relieved as counsel of record based on a conflict of interest.

In August 2018, Rodriguez filed a motion for new trial on the grounds his former trial counsel failed to provide him with effective assistance of counsel.  He asserted that after trial, his new attorney found a report prepared in October 2011 by the Office of the Alternative Defender.  The report contained a copy of an interview with Wife.  After explaining the reasons why she and Husband went to their garage, which we need not repeat here, she described the intruders and their actions.  Relevant to this appeal, Rodriguez asserted Wife stated the man she caught inside her vehicle (later determined to be Rodriguez) initially pointed a handgun at them and pulled the trigger twice.  She described the handgun as a "'fake-looking plastic gun'" similar to one that would be sold by a toy vender at a "'swap meet.'"  Wife described the weapon as grey and had a black handgrip.  She stated after pulling the trigger, Rodriguez, "put the gun back inside his right pant pocket and retrieved a 'long rifle' from inside the front chest area of the sweater he was wearing."  Wife added that after Rodriguez told them not to move, "the heavyset man standing at the front of the car," Mejia, yelled to leave.  Wife heard Rodriguez, who was holding the rifle, reply "'I'm going to give them a scare'" and then "proceeded to rack the gun and pull the trigger at least three times[.]"  Wife stated the weapon did not discharge and she believed the shotgun was unloaded.

In his motion for new trial, Rodriguez asserted his attorney was ineffective for failing to cross-examine Wife about her statements in this report, which suggested she knew Rodriguez was using a toy gun and only wanted to scare but not harm her and Husband.  In support of the motion, Rodriguez's trial attorney, Ernest Eady, filed a declaration stating that after the trial was completed and he was putting the "file back together" he discovered the defense investigator's report.  He stated the information in

---

[2]  We discuss the details of Rodriguez's sentencing in more depth anon.

4

the report about Rodriguez using a fake gun and only wanting to scare Husband and Wife "mirrored" Rodriguez's trial testimony. He conceded he had "no explanation as to why [he] did not see the report before trial" and that "once [he] saw that report [he] declared a conflict.

The prosecutor opposed the motion. He argued Rodriguez was asking the court to consider unreliable evidence. He asserted the following: "While trial counsel provided a declaration, the actual report from the Alternate Public Defender of the interview of [Wife] consists of multiple layers of hearsay. The investigator who wrote the report apparently did not speak Spanish and there has been no testimony or an affidavit by the investigator as to its accuracy. There has been no testimony nor an affidavit from the Spanish language interpreter regarding their qualifications as an interpreter or the accuracy of the report as written. Furthermore, there is no known recording of the interview. In addition, how credible can this evidence be when defendant himself did not even corroborate it with his own trial testimony? [Citation.]" In addition, the prosecution maintained the motion should be denied because Rodriguez failed to establish prejudice. Reciting portions of the testimony, he argued defense counsel was able to have both Wife and his client admit they did not know if the gun was real or fake. He noted Rodriguez never mentioned during his testimony that he only wanted to scare the couple. The court agreed with the prosecution and denied the motion.

DISCUSSION

I. *New Trial Motion for Ineffective Assistance of Counsel*

"Although ineffective assistance of counsel is not among the grounds enumerated for ordering a new trial under Penal Code section 1181, motions alleging ineffective assistance are permitted pursuant to 'the constitutional duty of trial courts to ensure that defendants be accorded due process of law.' [Citation.] We review such orders for an abuse of discretion. [Citation.]" (*People v. Callahan* (2004) 124 Cal.App.4th 198, 209.)

5

To prevail on an ineffective assistance of counsel (IAC) claim, a defendant must show counsel's performance was deficient under an objective standard of professional responsibility, and that it is reasonably probable he would have received a more favorable result at trial if counsel had not erred. (*Strickland v. Washington* (1984) 466 U.S. 668, 693-694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.) If no prejudice is shown, the reviewing court need not scrutinize counsel's failure to object for any deficiency. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

Rodriguez asserts the trial court erred by denying his motion for new trial because impeaching Wife about her prior statements would have supported the defense theory Rodriguez did not use a real gun and thus did not intend to kill nor attempt to murder Husband. The Attorney General (AG) concedes Wife's statements to the investigator would have been admissible at trial to impeach her testimony that omitted any reference to Rodriguez having a handgun before he pulled out the rifle, as well as her omission of the statement she attributed to Rodriguez that he was trying to scare them. The AG does not dispute defense counsel performed deficiently by failing to realize he had impeachment evidence in his possession but failed to introduce it at trial. The AG asserts notwithstanding this deficiency, the failure to introduce the impeachment evidence at trial did not prejudice Rodriguez because it was not reasonably probable he would have gotten a more favorable outcome at trial had the jury heard the prior statements. As explained below, we agree with the AG.

The statement attributed by the defense investigator to Wife that Rodriguez initially pulled out a handgun that looked fake, before he pulled out the rifle, would not have significantly impeached Wife's testimony. The crimes occurred on December 6, 2009. On October 20, 2011, almost two years after the incident, the defense investigator interviewed Wife through an interpreter. She then testified at trial more than seven years after the incident and five years after the interview, on February 27, 2017.

6

During her testimony at trial through an interpreter, Wife was asked whether the firearm she saw Rodriguez holding when she first saw him was a small gun like a handgun or a longer gun like a rifle. She said it was a rifle and admitted she had told the police it was a shotgun. Wife distinguished the gun Mejia pointed at her, a handgun, from the rifle or shotgun Rodriguez held.

Rodriguez asserts Wife's observations of a plastic toy gun made it more reasonable the rifle or shotgun was a BB gun rather than a real gun. However, the jury would have had no reason to conclude the rifle or shotgun used by Rodriguez was not real, even if it believed he first pulled out a handgun that looked like a toy gun. Wife never described the "long rifle" as appearing to be a toy. Husband also testified he saw Rodriguez with the rifle or shotgun before Wife did, and Husband stated the gun Rodriguez used was a rifle or shotgun, 14 or 15 inches long. He never suggested the rifle or shotgun he was describing appeared to be a toy. Husband testified Rodriguez used a shotgun or rifle and Mejia used a handgun.

Wife also testified that after the first and second time the rifle or shotgun failed to fire, she saw Rodriguez's face and he had an angry expression. She saw Rodriguez pull the trigger of the rifle or shotgun three times, twice saw the trigger of the rifle or shotgun move and heard the trigger "click." She also described Rodriguez shaking the rifle or shotgun up and down when it failed to fire.

Husband further corroborated Wife's testimony. He testified he witnessed Rodriguez pull the trigger of the rifle or shotgun "but it looked like it was jammed." He also stated Rodriguez pointed the rifle or shotgun at his upper torso and face. Husband said he was afraid because he thought "he was going to shoot and kill us right there."

Rodriguez testified in his own defense. He stated he never tried to fire the BB gun, and never had his finger on the trigger of the gun. Rodriguez disputed Wife's testimony he pulled the trigger or that she heard the gun "click" twice. He similarly disputed Husband's testimony. He acknowledged it was foolish for him and his uncle,

7

two Highland Street gang members, to go to an area where Rodriguez had been shot before to commit crimes with toy guns but rationalized it because they were high on drugs.

The statement attributed to Wife that Rodriguez told Mejia he was going to scare the victims may have marginally corroborated Rodriguez's testimony that he only intended to intimidate Husband when he pointed the rifle at him and had no intent to kill him. However, this testimony was contradicted by Wife's statements at trial, consistent with the statement attributed to her by the defense investigator, that Rodriguez attempted to fire the rifle at Husband, pulling the trigger three times. Rodriguez denied pulling the trigger even once, but the jury rejected his testimony.

The issues of whether Rodriguez possessed a real gun, as well as whether he intended to kill Husband, were squarely presented to the jury. Husband and Wife testified as to Rodriguez's actions, Rodriguez testified he and Mejia had only toy guns. Wife's statement Rodriguez initially had a handgun may be slightly inconsistent with her testimony at trial as to the handgun, but it does not undermine her testimony regarding the rifle or shotgun. At no time did Wife tell the defense investigator she thought the rifle or shotgun looked like a toy.

The jury heard testimony from Rodriguez that he had only a BB gun rifle or shotgun and rejected it. Furthermore, Husband and Wife candidly acknowledged they did not know if the gun used by Rodriguez was real. Their description of Rodriguez's actions with the rifle or shotgun, however, was convincing evidence that it was a real gun and that Rodriguez intended to kill Husband with it. The jury concluded Husband and Wife's testimony was credible and Rodriguez's testimony was not. There was no reasonable probability the jury's verdict would have been different if evidence of a statement to Wife made, two years after the crime, indicating Rodriguez first pulled out a fake looking handgun before then pulling out a rifle or shotgun, had been admitted.

8

II. *Sentencing Error*

The Attorney General agrees the sentence on count 4, for attempted murder, should be corrected. The court imposed a 15 years to life term, and the parties maintain it should be a life term with a minimum parole eligibility of 15 years. We agree.

The gang enhancement, section 186.22, subdivision (b)(5), specifies the life term for attempted premeditated murder is punishable under that section by increasing to 15 years the minimum parole eligibility for the life term. (§ 186.22, subd. (b)(5); see *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1228-1229.) Accordingly, the sentence on count 4 must be modified to reflect the imposition of a life term with the alternative penalty provision of a minimum parole eligibility of 15 years.

## DISPOSITION

The clerk of the superior court is directed to prepare a new abstract of judgment reflecting the imposition of a life term with the alternative penalty provision of a minimum parole eligibility of 15 years under section 186.22, subdivision (b)(5), and to forward the amended abstract of judgment to the Department of Corrections, Division of Adult Operations. We affirm the judgment as modified.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


IKOLA, J.


9