Filed 12/4/14  P. v. Sorto CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049199 |
| v. | (Super. Ct. No. 11WF1971) |
| TOMAS ANTONIO SORTO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed as modified.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was convicted of, inter alia, three counts of attempted premeditated murder for shooting at a group of unarmed men who were standing outside a nightclub. On appeal, he argues there is insufficient evidence he acted with premeditation, and the trial court's attempt to clarify the definition of premeditation for the jury was fatally flawed. We find these arguments unavailing. Therefore, other than to modify the judgment to correct two undisputed sentencing errors, we affirm.

FACTS

Mexico de Noche is a nightclub in Stanton. After the club closed at 2:00 a.m. on July 30, 2011, two of its security guards, Francisco Gutierrez and Salvador Felgueris, along with house deejay Jose Perez, stepped outside to have a smoke near the front entrance. They were talking among themselves when appellant and two other men approached. Appellant asked if they had any extra cigarettes and if the club was still open, and Gutierrez answered no to both questions. Appellant thanked them and walked away with his group. Although appellant did not show any signs of hostility, one of his companions had his hand hidden behind his back the whole time, leading Gutierrez to suspect he might be armed. The encounter also made Perez nervous because he feared appellant from the neighborhood.

Following the encounter, appellant and his companions walked across the street to a self-serve car wash located about 300 feet from the nightclub. There, the man who had his hand hidden pulled a gun from behind his back and gave it to appellant. Holding the gun in both hands with his arms fully extended in front of him, appellant pointed the weapon toward Gutierrez's group and fired four shots in rapid succession. Appellant and his cohorts then fled the area on foot.

At the time of the shooting, Gutierrez and his fellow workers were situated near a waist-high planter by the entrance to the nightclub. Gutierrez's car was parked in front of the club, and there was a pickup truck parked nearby, on the street. Both of these vehicles were in the line of fire between appellant and the victims. Gutierrez could hear

2

the shots whistling by as he and his companions ducked for cover behind the planter. One of the shots hit the outer wall of the club, about six feet from Gutierrez. Two struck the pickup truck. When examined, the bullets showed no signs of rifling, indicating they were fired from a gun that had diminished accuracy.

Appellant was arrested shortly after the shooting. When the police searched his residence, they found 10 rounds of ammunition and various writings associated with a Stanton criminal street gang known as RAW/MTK. A gang expert testified appellant was a member of RAW/MTK, and by carrying out the shooting in this case, appellant would not only earn respect for himself, but for his gang as well.

Appellant was convicted by jury of three counts of attempted premeditated murder and assault with a semiautomatic firearm and one count each of discharging a firearm with gross negligence and possessing ammunition while a felon. (Pen. Code, §§ 664/187, subd. (a), 245, subd. (b), 246.3, subd. (a), 12316, subd. (b)(1).)[1] The jury also found true allegations appellant acted for the benefit of a criminal street gang and personally used and discharged a firearm. (§§ 186.22, subd. (b), 12022.5, subd. (a), 12022.53, subd. (c).) The trial court sentenced him to a prison term of 105 years to life, plus 3 years.

*Sufficiency of the Evidence*

Appellant argues there is insufficient evidence to support the jury's finding that, in attempting to kill his victims, he acted with premeditation and deliberation. We disagree.

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence of the defendant's

---

[1] All further statutory references are to the Penal Code.

guilt. (*People v. Alexander* (2010) 49 Cal.4th 846, 917.) "Although we must ensure the evidence is reasonable, credible, and of solid value" (*People v. Jones* (1990) 51 Cal.3d 294, 314), reversal is not warranted unless "'upon no hypothesis whatever is there sufficient substantial evidence to support the judgment.'" [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Courts traditionally look at three categories of evidence in determining whether there is sufficient evidence to support a finding of premeditation and deliberation: 1) Planning, 2) motive and 3) the manner in which the killing or attempted killing occurred. (*People v. Anderson* (1968) 70 Cal.2d 15.) These categories are intended "to aid reviewing courts in assessing whether the evidence is supportive of an inference that the killing [or attempted killing] was the result of preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse. [Citation.]" (*People v. Perez* (1992) 2 Cal.4th 1117, 1125.) We must remember "premeditation can occur in a brief period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .' [Citations.]" (*Id*. at p. 1127.)

In this case, the record shows appellant's group had a gun with them when they initially contacted the victims. Although they showed no signs of aggression at that time, the encounter gave them ample opportunity to size up the victims, and the gunman kept his hand near his weapon the whole time. Their body language signaled they were armed, dangerous and ready for action, and that is exactly how Gutierrez interpreted their conduct. The fact appellant had a loaded handgun at the ready supports the inference the shooting was planned. (See *People v. Lee* (2011) 51 Cal.4th 620, 636; *People v. Wright* (1985) 39 Cal.3d 576, 593, fn. 5.)

By virtue of his membership in RAW/MTK, appellant also had a motive to kill the victims. As the gang expert testified, "Respect is everything to gang members." The expert explained gang members earn respect for both themselves and their gang by

4

committing crimes and instilling fear in the community, and "the more violent the crime is the more respect they get." Based on this testimony, the jury could reasonably infer appellant wanted to inflict maximum damage on the victims, i.e., kill them, in order to get maximum respect for himself and his gang. (*People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224 [gang member's desire to promote his gang and spread fear in the community gave him a motive to commit attempted premeditated murder].)[2]

As for the circumstances surrounding the shooting itself, Gutierrez testified that as soon as appellant's group crossed the street and made it to the carwash, appellant obtained the gun from his companion and took up a shooting stance. Both Gutierrez and Perez saw appellant pointing the weapon precisely in their direction. Gutierrez could even hear the shots go sailing past him as appellant was shooting. One of the shots missed him by a mere six feet, and two others struck the nearby pickup truck, which was directly in the line of fire between appellant and the victims. All of this suggests appellant targeted the victims by design and was out to kill them.

Appellant argues, "That the pickup truck got struck with two bullets is consistent with [his] using the truck for target practice in a grossly negligent fashion, acting on a spur-of-the-moment impulse[.]" He also asserts the fact he fired the shots in rapid succession indicates the shooting was impulsive, and if he had really wanted to kill the victims, he would have shot them at point-blank range when he initially contacted them outside the club rather than waiting until he was some 300 feet away.

These are reasonable arguments. They underscore why this was probably not a "slam-dunk" case for the jury. But we are not the jury. Whereas the jury's burden of proof was beyond a reasonable doubt, we are guided by the less onerous substantial

---

[2] The Attorney General argues appellant also had a motive to kill the victims because he had "a contentious relationship" with Perez. Perez did testify that he was afraid of appellant and went out of his way to avoid him in the neighborhood. However, there is no evidence appellant ever did anything to Perez, other than stare at him on a couple of occasions. Although staring can take on sinister connotations when it is done by gang members, the record fails to support respondent's suggestion appellant was motivated by any sort of personal animosity toward Perez.

evidence standard. So even if we believed the circumstances surrounding the shooting were reasonably reconcilable with a finding appellant acted rashly and impulsively, that would not warrant a reversal. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Despite appellant's interpretation of the evidence, the fact remains that when viewing the evidence in the light most favorable to the judgment below, *as we are required to do*, there is, for the reasons explained above, substantial evidence to support the jury's finding appellant acted with premeditation and deliberation. We cannot disturb the jury's finding in that regard.

*Instructions on Premeditation*

Appellant also insists the trial court erred in failing to clarify the definition of premeditation for the jury. The claim does not withstand scrutiny.

In instructing on the attempted murder count, the trial court informed the jury pursuant to CALCRIM No. 601 that, "The defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequence, decided to kill," and he "premeditate[d] if he decided to kill before acting." (CALCRIM No. 601, as given.)

During deliberations, the jury sent the trial court a note asking for "clarification of the definition of 'premeditation' as it pertains to attempted murder." After conferring with counsel, the court told the jury to "see CALCRIM 601, and any other instructions that you feel are applicable." Then using language from CALJIC No. 8.67, the court stated, "The word 'deliberate,' which relates to how a person thinks, means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. [¶] The word 'premeditated' relates to when a person thinks and means considered beforehand. [¶] One premeditates by deliberating before taking action."

Appellant has no qualms with the substance of the court's response. But he complains that by telling the jurors to not only see CALCRIM No. 601, but also any other

6

instructions they felt were applicable, the court opened the door for them to make their own decisions about what law to consider in deciding whether the shooting was premeditated. Appellant views this as an abdication of the court's responsibility to properly explain the concept of premeditation. We do not see it that way.

The trial court must instruct the jurors on all the legal principles necessary to their understanding of the case. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311.) If the jurors seek clarification on a point of law during deliberations, the court must attempt "to clear up any instructional confusion" they express. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212, superseded on another ground as stated in *In re Steele* (2004) 32 Cal.4th 682, 691; § 1138.) But in reviewing the adequacy of any such attempt, we assume jurors are intelligent people who are fully capable of understanding and correlating all of the instructions they are given. (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.) Unless it is reasonably likely the jury misunderstood the challenged instruction in a manner that violated the defendant's rights, we must uphold the court's charge to the jury. (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.)

Here, the court's response to the subject question about premeditation was legally correct. It properly directed the jurors to CALCRIM No. 601 and provided further explanation of that concept in simple and straightforward terms. Had it wanted to, the court could have ended its response there. Still, there was nothing problematic about telling the jurors they could also consider any other instructions they felt were applicable. While appellant fears this invited mischief, we perceive it as nothing more than a reminder for the jury to consider the instructions as a whole, even though all of them may not necessarily apply. (See CALCRIM No. 200.) For example, in deciding whether appellant acted with premeditation, the jurors would probably have wanted to consider not only CALCRIM No. 601, but also the instructions on the presumption of innocence and the burden of proof. Yet, they were unlikely to have found anything useful in the

7

instructions setting forth the elements for the charge of unlawfully possessing ammunition.

The point is, jurors must be given some leeway in determining which instructions are apt to the facts as they find them to be. There is nothing in the record to suggest the jurors somehow bungled their responsibility in this regard. Nor is there anything in the record to support appellant's assumption the jurors somehow applied the wrong legal standard in determining whether he was guilty of attempted premeditated murder. Therefore, there is no reason to disturb the verdict.

*Sentencing Issues*

There are, however, two sentencing errors that need correction. As the Attorney General concedes, the trial court should have stayed appellant's gun enhancements under section 12022.5, subdivision (a) on the attempted murder counts because the more punitive gun enhancement allegations under section 12022.53, subdivision (c) were found true as to those counts. (§ 12022.53, subd. (f); *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129-1130.) Also, as to the section 186.22, subdivision (b) gang enhancement attendant to the negligent discharge finding on count 4, the minute order of the sentencing hearing must be corrected to reflect the fact the court sentenced appellant to a stayed term of 3 years, not 10 years. (See *People v. Mesa* (1975) 14 Cal.3d 466, 471 [trial court's oral pronouncement controls over clerk's written order].) We will modify the judgment accordingly.

DISPOSITION

The clerk of the superior court is directed to modify the abstract of judgment and the sentencing hearing minute order dated September 13, 2103, to reflect: 1) Pursuant to section 12022.53, subdivision (f), sentence was imposed but stayed on each of the section 12022.5, subdivision (a) gun enhancements attendant to counts 1 through 3; and 2) Pursuant to section 186.22, subdivision (b), appellant was sentenced to a three-year stayed enhancement on count 4. The clerk of the superior court is directed to

8

prepare an amended abstract of judgment reflecting this modification and send a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                   BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

9