[No. B022033. Second Dist., Div. Seven. Mar. 10, 1988.]

THE PEOPLE, Plaintiff and Respondent v.
VINCENT JAMES WELLS, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Jill Ishida, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Linda C. Johnson and Carolyn D. Fuson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—Vincent James Wells appeals from a judgment of conviction rendered against him for murder in the first degree (Pen. Code, § 187).[1] The central issue on appeal is whether there is sufficient evidence to support a finding of premeditated and deliberate murder. For the reasons set forth below, we affirm the judgment.

## I.  STATEMENT OF FACTS AND PROCEEDINGS BELOW

Appellant was charged by information in count I with the murder of Larry Douglas Moore on June 15, 1985, in violation of section 187. It was further alleged he personally used a handgun within the meaning of sections 12022.5 and 1203.06. Count II alleged Wells committed assault with a

---

[1] Unless otherwise indicated all statutory references are to the Penal Code.

firearm against Rachall McElroy in violation of section 245, subdivision (a)(2) and that he personally used a handgun during the commission or attempted commission of the crime in violation of section 12022.5. He was found guilty by jury of count I and not guilty of count II. Wells was sentenced to state prison for 27 years to life which included an additional term of 2 years imposed pursuant to section 12022.5. Wells timely appealed.

Viewed in the light most favorable to the judgment below, the record reveals the following facts. On June 14, 1985, the victim and his friends went to a dance at Bryant's Melodyland Dance Center in Long Beach. The victim and his friend Rachall McElroy had been members of the Palm and Oak gang. When the victim first arrived at the dance McElroy saw him shaking hands with some of the males who later jumped the victim. The latter were wearing gang attire consisting of blue scarves, hats and shades which tended to identify them as members of the Crips gang. Around midnight McElroy observed the victim on the dance floor talking with a man called "Dirty Bird" who was a member of the Insane Crips. The victim took off his coat. "Dirty Bird" walked away. When he returned they started to fight. Shortly thereafter other males joined in and started fighting with the victim. He then saw appellant pointing a gun at him and the victim. McElroy dove toward the door and heard gunshots.

John Heath also saw the fight. He observed people rushing the victim, hitting him with their fists and chairs and finally pushing him against a mirror which broke. As the victim moved along the wall the attackers caught him with chairs. He described the attackers as dressed in a distinctive style characteristic of the Rolling "20's" or Insane Crips gang. He also saw appellant pull out a gun from inside his jacket and shoot it in the air. The victim was running toward the door. Appellant followed him firing shots. McElroy testified the shots were not fired rapidly one after another but all occurred within approximately 10 to 15 seconds.

Rhonda McElroy and Tonia Buchanan saw the fight but did not see who shot the victim. Both also saw someone in the dancehall with a knife. McElroy testified she saw a Black male attack the victim with a knife. Buchanan stated she did not actually see the stabbing even though she saw a couple of guys coming in through the window. One was carrying a knife.

The medical examiner testified that Larry Moore died of multiple stab and gunshot wounds. The victim suffered three gunshot wounds. One was located in the right posterior shoulder-chest area. Two other bullets entered

the right lower back and the left back. One wound was described as a contact abrasion which indicates the muzzle of the gun was touching the skin. According to the medical examiner this was an immediately fatal wound. The victim was subsequently stabbed at least three times.

## II.  THERE WAS SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF PREMEDITATED AND DELIBERATE MURDER.

■ Appellant contends there was insufficient evidence to support a finding of the premeditated and deliberate murder of Larry Moore. We disagree.

■ In determining whether there was sufficient evidence to support the judgment we must view the evidence found in the whole record in a light most favorable to respondent and presume the existence of any fact the trier could have reasonably deduced from the evidence in support of the judgment. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation omitted]." (*People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758] disapproved on other ground in *People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433].)

■ *People* v. *Anderson* (1968) 70 Cal.2d 15 [73 Cal.Rptr. 550, 447 P.2d 942] sets forth the guidelines for reviewing a finding of first degree murder based on premeditation and deliberation. (*People* v. *Bloyd* (1987) 43 Cal.3d 333, 347 [233 Cal.Rptr. 368, 729 P.2d 802].) It delineates three categories of evidence which are sufficient to sustain such a finding. The first category includes facts which show planning activity prior to the actual killing. Category two includes facts about the defendant's prior relationship or conduct with the victim from which the trier of fact could infer motive. Category three consists of facts about the nature of the killing from which the trier of fact could infer that the manner of killing was so particular and exacting as to be accomplished according to a preconceived design. (*People* v. *Anderson, supra,* at pp. 26-27.) The *Anderson* court concluded that verdicts of first degree murder will be typically sustained "when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (*Id.* at p. 27.)

■ The finding of premeditation and deliberation is supported by the record in all three categories. Although evidence of prior planning is not unambiguous, the record contains facts which strongly support the inference of motive and that Wells intentionally killed Larry Moore in such a particular and exacting way as to suggest a preconceived design to kill him.

Although the record lends no support for the inference appellant targeted the victim prior to the events of that evening, planning could have begun moments before appellant fired a shot into the ceiling without disturbing the finding of premeditation and deliberation. (See generally Annot. (1982) 18 A.L.R.4th 962 (1987 pocket supp.) pp. 55, 56.)

■ The length of time which must pass before a killing can be described as deliberated and premeditated is a question of fact. (*People* v. *Bender* (1945) 27 Cal.2d 164, 184 [163 P.2d 8].) True murder of the first degree does not include those homicides which result from " 'mere unconsidered or rash impulse.' " (*Id.* at p. 185 quoting *People* v. *Thomas* (1945) 25 Cal.2d 880, 900-901 [156 P.2d 7].) This is because the rationale for the statutory distinction between first and second degree murder (§ 189) is to render more severe penalties for murders which result from a cold and calculated intent to kill. (See generally LaFave & Scott, Handbook on Criminal Law (1972) p. 562; Perkins, Criminal Law (2d ed. 1969) pp. 88-89.) Implicit within this distinction is the assumption that premeditated and deliberated murder can be more easily discouraged by imposing higher penalties since a rational mind could weigh the alternatives and be deterred from killing another. This test is not so much the duration of time that the killer formulates a deliberate and premeditated intent to kill as it is the extent of the reflection. (*People* v. *Bender, supra,* 27 Cal.2d 164, 185.)

*People* v. *Rowland* (1982) 134 Cal.App.3d 1, 8 [184 Cal.Rptr. 346] is distinguishable from the case at bar. In that case defendant strangled a woman with an electrical cord. (*Id.* at p. 7.) On appeal the court concluded there was insufficient evidence to support a conviction of first degree murder in part because strangulation of the victim with an electrical cord did not suggest that defendant had taken " 'thoughtful measures' to procure a weapon for use against the victim." (*Id.* at p. 8.) The court reasoned that an electrical cord "is a normal object to be found in a bedroom and there was no evidence presented that defendant acquired the cord at any time prior to the actual killing." (*Ibid.*)

■ We agree with respondent that a concealed loaded handgun is not a normal object to carry to a dance. Appellant's possession of the handgun is

consistent with intent to kill a rival gang member even if it does not provide solid evidence of prior planning to kill this particular victim. (See *People* v. *Salas* (1972) 7 Cal.3d 812, 824 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832] [brandishing a gun while robbing a bar and telling victims he would " 'blow [their] heads off' " indicated defendant intended to kill to prevent his apprehension]; cf. *People* v. *Bloyd, supra,* 43 Cal.3d 333, 348 [defendant's admission he obtained a .357 magnum and carried shells on his person is ambiguous evidence of planning].)

■ There was sufficient evidence in the record to support the inference the killing of Larry Moore was motivated by gang rivalries. Rachall McElroy testified that both he and the victim had been members of the Palm and Oak gang. The men who attacked the victim were described as wearing clothing which tended to identify them as members of the Crips gang. Tonia Buchanan related that Rachall McElroy had told her the man who shot the victim was a member of the Insane Crips. When asked how McElroy knew this, she replied "[h]e [the shooter] yelled it out. Everybody heard it." She did not know, however, if Rachall McElroy had heard the person yell out the gang's name. Appellant denied being a member of the Crips in June 1985, and explained that he had never been initiated into the Crips although he admitted he used to say he was a Crip. Appellant's right arm is tattooed "East Side Crip" with a backwards "r."

■ As in *People* v. *Bloyd, supra,* 43 Cal.3d 333, 348, the manner of killing provided strong evidence of premeditation and deliberation. The defendant in *Bloyd* shot one victim in the head at point-blank range while she was lying on her back[2] and shot the other from the distance of one foot while he was kneeling. (*Ibid.*) Here the evidence shows that Larry Moore also was killed in a methodical way. First, appellant fired a warning shot into the air. This cleared the dance floor as people scattered in panic. The victim who had been pushed into a mirror by other gang members was fleeing along the wall toward the door. Appellant ran after him and fired three bullets into Moore's back, one of them with the muzzle pressed against the victim's upper back. As respondent points out, the shots were not fired rapidly but rather slowly enough for appellant to take careful aim.

■ We conclude the record fully supports the finding appellant with premeditation and deliberation pursued and executed a wounded member of a rival gang. This, we hold, constitutes murder in the first degree.

---

[2] The jury returned a verdict of second degree murder as to this victim. (*Id.* at p. 346.)

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.