Filed 1/26/15  P. v. Guerrero CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B254607 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA101431) |
| v. | |
| DORIAN ROSALIO GUERRERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert M. Martinez, Judge.  Affirmed with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Dorian Rosalio Guerrero appeals from the judgment entered following a jury trial in which he was convicted of attempted murder, shooting at an occupied vehicle, carjacking, unlawfully driving or taking a vehicle, carrying a loaded and unregistered handgun, possessing a controlled substance with a handgun, and resisting an executive officer.

Defendant contends the evidence was insufficient to support the jury's finding that the attempted murder was deliberate and premeditated. We conclude substantial evidence supports the jury's finding.

Defendant further contends the trial court erred by failing to instruct sua sponte on attempted voluntary manslaughter based upon a theory of sudden quarrel or heat of passion. We conclude the trial court had no duty to so instruct because there was no substantial evidence of provocation.

## BACKGROUND

**1.    Counts 1 through 3**

**a.    Defendant's relationship with victim and events of January 30**

Daisy Gonzalez testified she had been in a romantic relationship with defendant for about a year as of January 2013.[1] They lived together in El Monte and had an infant daughter. Their relationship was troubled and sometimes violent. Defendant previously had stabbed Daisy in the elbow with a knife.[2] In late January, Daisy told defendant she wanted to break up with him, and defendant attempted to dissuade her.

On January 30, as Daisy and defendant discussed her decision to leave him, defendant pointed a gun at her and told her "not to do anything or she'll regret it." Daisy

---

[1] Undesignated date references are to 2013.

[2] We sometimes use first names to prevent confusion. By doing so, we mean no disrespect.

later told Officer Bryan Tromp that defendant had made a similar statement about a month earlier, also while pointing a gun at her.[3]

When Daisy's mother, Ana Madrigal, arrived to drop off Daisy's daughter on January 30, Daisy said she was frightened and asked Madrigal not to leave. After Daisy told Madrigal defendant had threatened her with a gun, Madrigal grabbed the baby and put her in the car. Before Daisy could get into Madrigal's car, defendant emerged from their apartment, chased Daisy around the car, and attempted to grab her. Madrigal took out her phone and said she was going to call the police, but defendant snatched the phone from her hand. Daisy got in the car and Madrigal began to drive away.

Defendant got into Daisy's truck, pursued Madrigal's car, pulled in front of it, and stopped. Daisy exclaimed that defendant had a gun, but he got out of the truck with his hands up. Eventually he got back into Daisy's truck and drove away, and Madrigal resumed driving toward her home. Daisy saw a police car along the way, caught the officer's attention, and told him what had happened.

b.    **Events of January 31**

On the night of January 31, Daisy went to the apartment with her parents and uncle to retrieve Daisy's truck and the baby's formula and clothes. Defendant argued with Daisy or Madrigal about whether he or Daisy would unlock the door, but eventually unlocked the door and handed over the baby formula and truck keys.

Defendant stood near the door with his right hand in his right pocket and repeatedly requested that Daisy come inside. He then knelt and begged her to forgive him and not leave him. He either kept his right hand in his pocket or returned it to his pocket while kneeling. As Daisy walked backward toward her truck, defendant pulled a handgun from his right pocket and pointed it toward his head. Daisy ran toward her truck.

---

[3] Daisy was a reluctant witness at trial, denying or claiming not to remember various matters tending to incriminate defendant. She admitted she did not want anything to happen to defendant.

Defendant fired the gun near his head, and Daisy's family members ran. Daisy got in the driver's seat of her truck, but could not leave because her father's truck was blocking hers. Defendant stood up and either walked or ran out of the apartment, holding the gun in front of him, with his arm outstretched.

The accounts of Daisy and her three relatives differed on what occurred next. Daisy testified defendant attempted to open the passenger-side door of her truck, then her uncle Manuel Gonzalez "bear- hug[ged]" defendant. Defendant broke free, ran off, then reappeared at the passenger side of her truck. Daisy screamed and honked the truck's horn. Suddenly the mirror and window on the passenger side of her truck broke.

Tromp testified that when he interviewed Daisy later that evening, she told him defendant walked in front of her truck and pointed the gun at her through the windshield, then walked around to the passenger-side window of her truck while continuing to point the gun at her. He fired a shot at her through the passenger-side window, then stood and stared at her for about a minute before firing a second shot.

Nicholas Gonzalez (Daisy's father) and Manuel Gonzalez testified defendant walked toward the front of Daisy's truck, then to the passenger side while continuing to point the gun at her. Defendant aimed and fired the gun at Daisy through the passenger-side window. Nicholas estimated defendant was five or six feet from Daisy when he fired, while Manuel estimated the distance as about eight feet. Manuel testified defendant fired two shots at Daisy at this time. Manuel then grabbed defendant and his arms from behind. Defendant struggled, broke free, and ran down the driveway, but then returned to the passenger side of Daisy's truck. Nicholas testified defendant aimed the gun at Daisy and fired again. Manuel could not remember if defendant fired again.

Madrigal's testimony was virtually identical to that of Nicholas, but she testified defendant fired the first shot at Daisy as he was walking toward her truck. Madrigal testified defendant was right next to the passenger-side door of Daisy's truck when he fired the subsequent shots at her.

4

Everyone, even Daisy, testified defendant reached through the broken passenger-side window of her truck, unlocked the door, and climbed in. Daisy fled to her father's truck and exhorted him to drive away, but his truck would not start. Defendant backed Daisy's truck into Nicholas's truck twice, then drove away from the scene. A neighbor, who testified he also saw defendant fire two shots at Daisy, ushered Daisy and her family members into his apartment. The neighbor's mother had already called 911 and Daisy spoke to the dispatcher.

Tromp and other officers arrived at the scene. Daisy was crying and terrified as Tromp interviewed her. She told Tromp defendant had pointed a gun at her a few times. In the kitchen of defendant's apartment, officers located a hole and scuff mark they thought had been made by a bullet, but they found no casings at the scene. Daisy's truck was found abandoned about an hour later and contained a bullet fragment on the passenger side, either on the seat or floor. The passenger-side window was broken and there was broken glass inside the vehicle. Gunpowder tests were not performed on the broken glass, nor was the broken glass booked into evidence.

## 2. Counts 5 through 8

Paul Campbell's 2005 Nissan truck was stolen from outside of his Monrovia home on March 19. On the afternoon of March 29, Officer Jacob Salmon attempted to stop a Nissan truck with paper license plates. Salmon turned on his patrol car's solid red and flashing blue lights and siren. The truck sped away, ran three stop signs and a red light, then crashed into a railing and flipped. Defendant climbed out the driver's-side window and ran away on foot. Salmon pursued him on foot and repeatedly ordered defendant to drop to the ground. Defendant did not comply and ran into a nursery. Salmon pursued him. On several occasions defendant stopped and told Salmon to shoot him, then resumed his flight. Eventually, backup officers arrived. One fired a Taser at defendant, then pushed him down. Defendant struggled against a group of officers, who attempted to secure his arms and handcuff him. Eventually they succeeded. An officer who pat-searched defendant recovered a loaded, unregistered .380-caliber semiautomatic handgun

5

from defendant's left pocket. Later on, another officer recovered from defendant a plastic bag containing 0.21 grams of methamphetamine.

**3. Verdicts and sentencing**

The jury convicted defendant of attempted murder and found that the crime was willful, deliberate, and premeditated. It further found defendant personally and intentionally fired a gun in the commission of the crime. (Pen. Code, § 12022.53, subd. (c).)[4] With respect to the same incident, the jury also convicted defendant of shooting at an occupied vehicle and carjacking. It found defendant personally used a gun in the commission of the carjacking. (§ 12022.53, subd. (b).) With respect to the March incident, the jury convicted defendant of unlawfully driving or taking a vehicle, carrying a loaded and unregistered handgun, possessing a controlled substance with a handgun, and resisting an executive officer.[5]

The court sentenced defendant to prison for an aggregate term of life plus 22 years 4 months.

## DISCUSSION

**1. Sufficiency of evidence of premeditation and deliberation**

Defendant contends the evidence was insufficient to support the jury's finding that the attempted murder was deliberate and premeditated. We conclude substantial evidence supported the finding.

**a. Governing legal principles**

To resolve a sufficiency of evidence issue, we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable jury could find guilt beyond a reasonable doubt. (*People*

---

[4] Undesignated statutory references are to the Penal Code.

[5] The jury found the allegation that defendant personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivision (c) to be not true.

6

*v. Tully* (2012) 54 Cal.4th 952, 1006.)  Substantial evidence is "'"evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'"  (*Ibid*.)  We presume the existence of every fact supporting the judgment that the jury could reasonably have deduced from the evidence and make all reasonable inferences that support the judgment.  (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Catlin* (2001) 26 Cal.4th 81, 139.)

"Premeditated" means "'considered beforehand'" and "deliberate" means "'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.'"  (*People v. Mayfield* (1997) 14 Cal.4th 668, 767.)  The extent of the reflection, not the length of time, is the true test.  (*Ibid.*)  These processes can occur very rapidly, even after an altercation is under way.  (*Ibid*.; *People v. Sanchez* (1995) 12 Cal.4th 1, 34, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Three types of evidence that typically support a finding of premeditation and deliberation are planning activity, a prior relationship with the victim or conduct from which a motive could be inferred, and a manner of killing from which a preconceived plan could be inferred.  (*People v. Anderson* (1968) 70 Cal.2d 15, 26–27 (*Anderson*).)  These categories are not prerequisites, however, but merely guidelines to assist reviewing courts by "'catalog[ing] common factors that had occurred in prior cases.'"  (*People v. Young* (2005) 34 Cal.4th 1149, 1183.)

**b.      Substantial evidence supports the jury's finding of premeditation and deliberation**

In this case there was evidence of each factor cataloged in *Anderson*.  Defendant knew who was outside the door of the apartment on the night of January 31 because he argued with Daisy or her mother about opening the door.  Defendant's subsequent behavior established that when he finally opened the door, he had the gun in his right pocket.  Furthermore, he kept his hand in that pocket while speaking with Daisy and attempting to persuade her to enter the apartment and not leave him.  This constituted

evidence of planning, in that it showed advance consideration of the possibility of killing or attempting to kill her or her family members, and preparation for that possibility. (*People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224; *People v. Wells* (1988) 199 Cal.App.3d 535, 540–541.)

The record also presented abundant, undisputed evidence of a prior relationship between Daisy and defendant, as well as matters from which a motive could be inferred. Defendant and Daisy had been in a romantic relationship for about a year and had a child together. Defendant did not want Daisy to carry out her plan to end their relationship and repeatedly attempted to prevent her from doing so. On January 30, as Daisy and defendant discussed her decision to leave him, defendant pointed a gun at her and told her "not to do anything or she'll regret it." When Daisy was about to leave with Madrigal that night, defendant chased her around the car and attempted to grab her, and then took Madrigal's phone when she threatened to call the police. Next, defendant got in the truck and chased and stopped Madrigal's car as she attempted to drive Daisy and the baby to Madrigal's home. On the night of January 31, defendant begged Daisy not to leave him.

Finally, the sequence, timing, and nature of defendant's action demonstrate a manner of attempted killing reflecting premeditation and deliberation. Defendant did not fire a number of shots in rapid succession after exiting his apartment. He walked out with his arm outstretched, walked in front of Daisy's truck, all the while aiming the gun at her, walked to the passenger-side window, fired one or two shots from close range, broke free of Manuel's bear hug, ran down the driveway, returned to the passenger side of Daisy's truck, aimed the gun at her again, and fired another close-range shot at her through the passenger-side window. Alternatively, according to Daisy's statement to Tromp, defendant fired a shot at her through the passenger-side window, stared at her for a minute, then fired a second shot at her through the same window. Under either alternative, the time lapse and/or defendant's actions between the two shots strongly support a reasonable inference defendant thought about and weighed the considerations for and against firing a second shot at Daisy.

8

For all of these reasons, we conclude substantial evidence supported the jury's finding of premeditation and deliberation.

**2.      Failure to instruct sua sponte on attempted voluntary manslaughter**

The defense theory at trial was defendant did not fire any shots at Daisy, but merely banged on her truck window with the gun to break it.  Indeed, defense counsel argued without objection that defendant, who did not testify, had told counsel he had banged on the window to break it.  Defendant did not request instruction on attempted voluntary manslaughter on any theory.

Defendant contends the trial court erred by failing to instruct sua sponte on attempted voluntary manslaughter based upon a theory of sudden quarrel or heat of passion.  We conclude the trial court had no sua sponte duty to so instruct because there was no evidence of legally adequate provocation.

**a.      Governing legal principles**

A trial court must instruct sua sponte on a lesser included offense if there is substantial "'evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser'" one.  (*People v. Souza* (2012) 54 Cal.4th 90, 115–116.)  Substantial evidence in this context is "'evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist." (*Id.* at p. 116.)  The "'substantial evidence requirement is not satisfied by "'*any* evidence . . . no matter how weak.'"'"  (*Ibid.*)  This duty to instruct exists notwithstanding the defendant's wishes, trial theories, or tactics.  (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)

We independently review the necessity of instructing on a lesser included offense.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

Attempted voluntary manslaughter, which is a lesser included offense of attempted murder, consists of an attempted killing upon sudden quarrel or heat of passion or in an actual, but unreasonable, belief in the need to defend against imminent death or great bodily injury.  (*People v. Williams* (1988) 199 Cal.App.3d 469, 475.)  If neither heat of

9

passion nor "unreasonable" self-defense applies, attempted voluntary manslaughter is unavailable as a lesser included offense to attempted murder. (*People v. Hines* (1997) 15 Cal.4th 997, 1052.)

Heat of passion has both objective and subjective components. (*People v. Moye* (2009) 47 Cal.4th 537, 549 (*Moye*).) To satisfy the objective component, the claimed provocation must be sufficient to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection, from passion rather than from judgment. (*Id.* at p. 550; *People v. Carasi* (2008) 44 Cal.4th 1263, 1306 (*Carasi*).) "To be adequate, the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection. . . . [T]he anger or other passion must be so strong that the defendant's reaction bypassed his thought process to such an extent that judgment could not and did not intervene." (*People v. Beltran* (2013) 56 Cal.4th 935, 949 (*Beltran*).) "[T]he passion aroused need not be anger or rage, but can be any ""[v]iolent, intense, high-wrought or enthusiastic emotion"" [citation] other than revenge." (*Breverman*, *supra*, 19 Cal.4th at p. 163.)

"'The provocation . . . must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim.'" (*Moye*, *supra*, 47 Cal.4th at pp. 549–550.) "[T]he victim must taunt the defendant or otherwise initiate the provocation." (*Carasi*, *supra*, 44 Cal.4th at p. 1306.) A defendant may not """"set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused . . . .""" (*People v. Cole* (2004) 33 Cal.4th 1158, 1215–1216, quoting *People v. Steele* (2002) 27 Cal.4th 1230, 1252.)

**b.      The trial court had no duty to instruct sua sponte on attempted voluntary manslaughter**

Nothing in the record supports an inference that Daisy engaged in any conduct that could be deemed to be adequate provocation in support of a heat of passion theory. Breaking up with defendant, bringing her relatives to help collect her things because she feared defendant, rejecting defendant's pleas not to leave him, and leaving their

10

apartment were all reasonable acts by Daisy. They would not be sufficient to cause an ordinary person of average disposition to experience such strong anger or other passion that he or she would react rashly without the intervention of judgment. Defendant argues "the jury could reasonably have inferred from the argument at the front door of the apartment that sufficient inflammatory words were spoken by Daisy to support a finding that [defendant] acted on provocation and in the heat of passion." Daisy and her mother testified the argument was merely about who would unlock the door: defendant or Daisy. Such an argument would not be sufficient to inflame the passions of an ordinary person of average disposition to the legally requisite extent. Any inference "that sufficient inflammatory words were spoken by Daisy" during that argument would have been based on rampant speculation. The duty to instruct sua sponte requires substantial evidence, not substantial speculation.

*Beltran*, *supra*, 56 Cal.4th 935, upon which defendant relies, did not eliminate the requirement of adequate provocation or require sua sponte instruction on heat of passion in the absence of substantial evidence of adequate provocation. Indeed, the jury in *Beltran* was instructed upon heat of passion. (*Id.* at pp. 943–944.) *Beltran* instead addressed the wording of that instruction and clarified that "provocation is not evaluated by whether the average person would *act* in a certain way: to kill. Instead, the question is whether the average person would *react* in a certain way: with his reason and judgment obscured." (*Id.* at p. 949.)

Accordingly, we conclude the trial court did not err by failing to instruct sua sponte on attempted voluntary manslaughter.

**3.      Error on abstract of judgment**

The trial court imposed a term of eight months for count 8. The abstract of judgment erroneously reflects a one-year term for count 8 and an aggregate term of life plus 22 years 8 months, instead of life plus 22 years 4 months. The abstract must be amended to correct this error.

11

## DISPOSITION

The judgment is affirmed.  If it has not already done so, the trial court is directed to issue an amended abstract of judgment reflecting an eight-month term on count 8 and an aggregate term of life plus 22 years 4 months.  The trial court is directed to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


BENDIX, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.