Filed 3/26/21  P. v. Barrientos CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B301531 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA474073) |
| v. | |
| JEFFREY BARRIENTOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General for Plaintiff and Respondent.

————————————

**INTRODUCTION**

A jury convicted Jeffrey Barrientos of attempted murder and possession of a firearm by a felon. The jury found true allegations that the attempted murder was willful, deliberate, and premeditated, and that Barrientos personally and intentionally discharged a firearm.

Barrientos contends that substantial evidence does not support the jury's findings of premeditation and deliberation. Barrientos also argues the prosecutor committed misconduct in his closing argument and rebuttal closing argument by allegedly misstating the burden of proof. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Information*

The information charged Barrientos with attempted willful, deliberate, and premeditated murder in violation of Penal Code[1] sections 664 and 187, subdivision (a) (count 1), and possession of a firearm by a felon (count 2). The information alleged that Barrientos personally used and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b) and (c), and personally and intentionally discharged a firearm which caused great bodily injury within the meaning of section 12022.53, subdivision (d). The information alleged that Barrientos had been previously convicted of a serious or violent felony within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12), which was a serious felony under sections 667, subdivision (a)(1), and 1192.7 and/or a violent felony under section 667.5, subdivision (c). It also alleged that Barrientos had served three prior prison terms within the meaning of section 667.5, subdivision (b).

_____

[1] All further statutory references are to the Penal Code.

2

Barrientos pleaded not guilty to the charges and denied the special allegations.[2]

B.     *The Prosecution Case*

On November 11, 2018 Jesus Alcorta lived in a recreational vehicle (RV) with his girlfriend Tanya and her baby Jordan.[3] Alcorta and Tanya had been together "on and off" for 10 years. Alcorta believed that Barrientos was Jordan's biological father. Tanya had an agreement with Barrientos to permit him to see Jordan "once in a while."

Before November 11, 2018 Alcorta had seen photographs of Barrientos on Facebook. Alcorta had also seen text messages Barrientos and Tanya had exchanged about Jordan, and Facebook messages between Barrientos and Tanya. Alcorta was suspicious about the text messages and about Tanya's relationship with Barrientos. Alcorta had seen Tanya with Barrientos from a distance once before November 11, 2018.

On November 11 at approximately 9:00 a.m., Alcorta was cleaning his van, which was parked near the RV. At the time Alcorta used crystal methamphetamine daily, and was under the influence that morning, but "was aware" of what was happening. A friend told him that a person had run inside the RV. Alcorta,

---

[2]     Barrientos admitted the prior conviction allegation, and the court found it true. Barrientos also stipulated for purposes of the felon in possession of a firearm charge that he had previously been convicted of a felony.

[3]     Alcorta testified that, at the time of his trial testimony, he was in jail serving time for "driving without a vehicle license," which Alcorta stated was a felony. Alcorta also testified that he had "had maybe a couple other felony convictions in the past," but had never been convicted of a violent crime.

3

believing it could be a thief who might harm Tanya and Jordan, ran to the RV, not knowing who was inside.

As Alcorta stepped into the RV, he saw Tanya lying on the floor and Barrientos pulling her by her hair. Barrientos turned towards Alcorta and "a second or two" later, shot him in the arm. Barrientos fired the gun with his left hand. He was wearing a blue Dodgers cap. When Barrientos fired, Alcorta's arm was raised near his chin and was six to eight inches from his face. Alcorta testified he was "100 percent" confident it was Barrientos who shot him.

After the shooting, Alcorta ran out of the RV and down the street. As he ran, he heard nine more gunshots—three sets of three shots. Alcorta testified, "I know somebody was chasing me. I was getting shot at. . . . I know I was being chased."

Alcorta ran to a nearby gas station and told the attendant he had been shot. The attendant called the police.

Los Angeles Police Officer Claire Smith responded to the gas station and spoke with Alcorta. Alcorta told her "his girlfriend's baby daddy" had shot him. Alcorta described the shooter as being bald and having a goatee. Alcorta told Smith that "his girlfriend's baby's father goes by the nickname of 'Lefty' and hangs out in the area of Alvarado . . . and also possibly has a first name of Jeffrey." Alcorta identified a photograph of Barrientos as the person who shot him.

The shot went through Alcorta's arm, leaving a scar. The wound did not require stiches, staples, surgery, or a cast.

Los Angeles Police Officer Adrian Pop responded to the RV. Officers made numerous commands for any occupants of the RV to exit. After 15 to 20 minutes, a woman and a little boy exited. The officers entered the RV. They did not find any other people in the RV, and they did not find any evidence of a shooting in the RV.

The officers found two spent bullet casings and a live bullet outside the RV.  The officers found bullet holes in two nearby cars.

On November 11, 2018 Katherine Romero's brother Edwin Romero woke her because he had heard six gunshots.  Katherine and Edwin saw police officers outside, so they viewed their home security footage to see what had occurred.  Edwin described one of the videos:

> "Right here where the black SUV and the red pickup is, there's an RV stationed there.  After hearing a gunshot and checking the system, I witnessed an individual coming out from this side of the RV. . . . To the right coming to the front of it and then crossing the street . . . ."

Edwin testified that one of the videos showed the man enter a vehicle.  The man appeared to be wearing a blue Dodgers cap.

On December 31, 2018 Officer Luis Martin arrested Barrientos near Alvarado Street and Temple Street.  On January 9, 2019 officers showed Edwin Romero a six-pack photographic display.  Edwin circled two photographs, one of which depicted Barrientos, as closely resembling the person he saw in the security video.  On January 10, 2019 Katherine identified Barrientos in a six-pack photographic display.  She wrote:  "After reviewing the video, the suspect in photo number 4 was seen returning to the trailer and exiting several minutes later getting into a two-door vehicle that was parked in front of our house."

C.    *The Defense Case*

Barrientos's sister, Nathalie Barrientos, identified photographs she had taken of Barrientos on November 22, 2018.  She testified that Barrientos had hair in the photographs.  Nathalie also testified that Barrientos is right-handed.

5

Dr. Ryan O'Connor, an emergency room physician, testified that chronic use of methamphetamine "can be associated with delusionary thought[,] hallucinations, distortion of perception, paranoia, violent behavior, [and] emotional liability [*sic*] where one second you seem kind of normal and the next minute you're kind of angry."

D.    *The Verdict and Sentencing*

The jury found Barrientos guilty of attempted murder and possession of a firearm by a felon.  The jury found true the allegations that the attempted murder was willful, deliberate, and premeditated, and that Barrientos personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivision (c).  The jury found not true the allegation that Barrientos personally and intentionally discharged a firearm which caused great bodily injury within the meaning of section 12022.53, subdivision (d).

The trial court sentenced Barrientos to an aggregate term of 34 years to life in prison.  The court imposed a life sentence with a minimum parole eligibility of 14 years pursuant to the three strikes law.  The court imposed a consecutive term of 20 years pursuant to section 12022.53, subdivision (c), for the firearm enhancement.  The court imposed the middle term of two years for the firearm possession conviction and stayed that term pursuant to section 654.  The court imposed five years pursuant to section 667, subdivision (a), and three years pursuant to section 667.5, subdivision (b); the court struck both of those sentences.

## DISCUSSION

A.    *Premeditation and Deliberation*

Barrientos argues substantial evidence does not support the jury's findings of premeditation and deliberation.  He contends the

6

shooting was spontaneous and that the jury's premeditation and deliberation finding should be stricken.

1.    *Applicable Law*

The People charged Barrientos with attempted murder and alleged he committed the crime willfully, deliberately, and with premeditation within the meaning of section 664, subdivision (a). "The very definition of 'premeditation' encompasses the idea that a defendant thought about or considered the act beforehand." (*People v. Pearson* (2013) 56 Cal.4th 393, 443 (*Pearson*); accord, *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1264 (*Boatman*).) " 'Deliberate' means ' " ' "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " ' " (*Boatman*, at p. 1264; accord, *People v. Houston* (2012) 54 Cal.4th 1186, 1216 (*Houston*).) "Thus, ' "[a]n intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." ' " (*Boatman*, at p. 1264; see *Pearson,* at p. 443.)

"Courts have also emphasized that ' " '[t]he process of premeditation and deliberation does not require any extended period of time.  "The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " ' " (*Boatman, supra*, 221 Cal.App.4th at p. 1265; accord, *Houston, supra,* 54 Cal.4th at p. 1216.)

In *People v. Anderson* (1968) 70 Cal.2d 15, the Supreme Court identified three types of evidence—evidence of planning activity, preexisting motive, and manner of killing—to consider in determining whether the evidence supports findings of premeditation and deliberation. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069; *People v. Solomon* (2010) 49 Cal.4th 792, 812.)

7

The Supreme Court in *Anderson* " ' "did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation." ' " (*Mendoza*, at p. 1069; *Solomon*, at p. 812.)  *Anderson* nevertheless provides a useful framework for considering the sufficiency of evidence of premeditation and deliberation.  (See *Mendoza*, at p. 1069; *Solomon*, at p. 812.)

" 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Abilez* (2007) 41 Cal.4th at 472, 504; accord, *People v. Jackson* (2016) 1 Cal.5th 269, 345.) " 'The standard of review is the same in cases in which the People rely mainly on circumstantial evidence.' " (*Abilez*, at p. 504; see *People v. Jones* (2013) 57 Cal.4th 899, 960.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*Abilez*, at p. 504; accord, *Jones*, at p. 960.)

2.      *Substantial Evidence Supports the Jury's Findings of Premeditation and Deliberation*

Substantial evidence supports the jury's findings of premeditation and deliberation.  Barrientos had a preexisting motive to harm Alcorta because Barrientos and Alcorta were involved with the same woman.  Indeed, at the time of the shooting, Alcorta lived with Tanya and Barrientos's young son in the RV where the first shooting occurred.

The record also contains evidence that Barrientos planned for at least the possibility of a violent confrontation at the RV because he took a loaded gun to the RV. (See *People v. Lee* (2011) 51 Cal.4th 620, 636 ["defendant brought a loaded handgun with him on the night Mele was killed, indicating he had considered the possibility of a violent encounter"]; *People v. Watkins* (2012) 55 Cal.4th 999, 1026 [sufficient evidence of planning shown where defendant carried loaded gun to position from which he shot at victim]; see also *Pearson*, *supra*, 56 Cal.4th at p. 443 [premeditation exists where defendant "thought about or considered the act beforehand"].)

Moreover, Barrientos did not fire just one shot at Alcorta. When Alcorta fled the RV after the first shooting, Barrientos chased him and continued firing at him. Barrientos could have stopped shooting after the first shot, but instead he chose to extend the episode by pursuing Alcorta and shooting at him repeatedly. (See *People v. Sandoval* (2015) 62 Cal.4th 394, 425 (*Sandoval*) ["[t]he fact that the manner of killing is prolonged . . . supports an inference of deliberation"]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1081 [killing was deliberate and premeditated where the defendant "pursued [the victim] and persisted in the argument"]; *People v. Wells* (1988) 199 Cal.App.3d 535, 541 [manner of killing evidenced premeditation and deliberation where defendant fired warning shot in air then ran after victim and shot him].)

There is no evidence Barrientos acted out of fear or passion in response to something Alcorta did or said. (See *Sandoval*, *supra*, 62 Cal.4th at p. 425 ["[t]here is little indication that the murder was rash and impulsive, as when a defendant acts out of a fear or passion in response to a provocation that is insufficient to show an absence of malice"].) There is also no evidence Alcorta

9

was armed or did anything to threaten Barrientos. Barrientos was the aggressor; he fired at Alcorta in the confined space of the RV, hitting Alcorta's raised arm a few inches from Alcorta's face. Having shot and wounded Alcorta, Barrientos decided to follow Alcorta in an attempt to kill him. The record contains substantial evidence from which a reasonable jury could conclude that the attempted murder was premeditated and deliberate.

B.    *Prosecutorial Misconduct*

Barrientos next argues the prosecutor committed prejudicial misconduct in his closing argument and rebuttal closing argument by allegedly misstating the burden of proof. He contends the prosecutor improperly suggested that the evidence against Barrientos was "unbreakable beyond a reasonable doubt" by comparing the evidence to a "brick wall" and an "unbreakable pile of sticks."

1.    *Applicable Law*

" ' "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." ' " (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1331-1332 (*Seumanu*); accord, *People v. Cortez* (2016) 63 Cal.4th 101, 130.) Bad faith is not required. (See *People v. Centeno* (2014) 60 Cal.4th 659, 666-667 (*Centeno*) [" '[t]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind[;] [a] more apt description of the transgression is prosecutorial error' "]; accord, *People v. Lloyd* (2015) 236 Cal.App.4th 49, 61.)

Ordinarily, " ' "[t]o preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument." ' " (*People v. Charles* (2015) 61 Cal.4th 308, 327; accord, *People v. Williams* (2013) 58 Cal.4th 197, 274.) The forfeiture doctrine does not apply when a request for an admonition would have been futile or would not have cured the harm. (*Seumanu*, *supra*, 61 Cal.4th at pp. 1328-1329; *People v. Hill* (1998) 17 Cal.4th 800, 820 (*Hill*).)

A conviction will not be reversed for prosecutorial misconduct that violates state law " 'unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct.' " (*People v. Wallace* (2008) 44 Cal.4th 1032, 1070-1071; accord, *Lloyd*, *supra*, 236 Cal.App.4th at pp. 60-61.)

2.  *The Prosecutor's Closing Argument and Rebuttal Closing Argument*

In his closing argument, the prosecutor stated that he "want[ed] to propose a metaphor" for how the jury "should think about" the evidence. The prosecutor explained:

> "I'll give you two metaphors in my comments today and this will be the first one, that you should think of evidence as bricks. Each brick building a wall. One brick by itself does not build that wall. . . . So the point is, you don't look at any brick by itself. You have to look at them all together and see if you have a wall."

The prosecutor then played portions of a video that had been admitted into evidence, described other evidence, and remarked, "Again, bricks in a wall." The prosecutor argued that Barrientos "walked into the RV with the gun ready to go" and that, after

shooting Alcorta, chased Alcorta and continued shooting at him. The prosecutor stated, "All of that, those are all bricks. Those are some of the bricks."

The prosecutor concluded his closing argument by telling the jury:

> "You need to look at all the evidence together. Your job as jurors, the reason we pick ordinary members of the community is to exercise common sense and draw reasonable conclusions and consider all of the evidence together. And when you do that, there can be no reasonable doubt of what happened on November 11th and that is that Mr. Barrientos tried to murder another human being. Thank you."

> In his rebuttal closing argument, the prosecutor stated: "At the end of the day I said I'd give you two metaphors. I gave you the brick before, right? And I'm going to give you a different one now. I want you to think of the evidence in this case now as a stack of twigs, okay? Because what the defense did and what's very common, you take each piece of evidence by itself and you press on it and you say, 'Oh, look at this evidence by itself. You have reasonable doubt about this evidence. Mr. Alcorta, high on meth, I have reasonable doubt. He said he was bald or Edwin circled two people, reasonable doubt.' Well, you know what? If you look at every single piece of evidence probably in every single case [*sic*].

Now, he didn't mention the car. He didn't explain to us where we rest on that one. He has no explanation for the car, but even taking the car aside, for each piece of evidence you can always do this exercise and say, like, 'Well, what about this? What about that?' You know, there's some [*sic*] you can make up an alternative story for why it makes sense or doesn't. It's like a twig, right? Any stick, you can break one stick, right? That's not how— you don't take each stick and throw it out one by one. That's what the defense wants you to do. That's not how you treat the evidence, though. You need to take each stick and pile it together and what you have here is a pile of sticks and then see if you can break that stack of sticks. It's not whether you can put weight on one piece of evidence. All this evidence fits together and when it fits together, it is unbreakable.

You can come up with imaginary doubt. We saw 45 minutes of imaginary doubt. That's not our exercise here. It's whether you can come up with a reasonable doubt or whether or not the case is proven."

3. *Barrientos Forfeited His Prosecutorial Misconduct Claim, and the Prosecutor's Arguments Were Not Improper*

Barrientos argues the prosecutor committed misconduct by improperly comparing the evidence against Barrientos to a "brick

13

wall" and an "unbreakable pile of sticks."  Barrientos did not object to any of the allegedly improper remarks.  Nothing in the record indicates that an objection would have been futile or that a prompt objection and admonition would not have cured the alleged harm. Accordingly, Barrientos forfeited his claim of prosecutorial misconduct.  (*Centeno, supra,* 60 Cal.4th at p. 674; *People v. Clark* (2011) 52 Cal.4th 856, 960.)

Even if Barrientos had not forfeited the claim, the prosecutor's statements did not misstate the burden of proof. Barrientos claims that the prosecutor's "brick wall" and "pile of sticks" arguments improperly suggested that the prosecution had proved its case, "when in fact [Alcorta's] testimony was contradictory and largely uncorroborated."  Determinations about Alcorta's credibility, and the resolution of any alleged inconsistencies in his testimony, were issues for the jury.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction."].)

In addition, during closing argument, the prosecutor instructed the jury "to look at all the evidence together;" "exercise common sense and draw reasonable conclusions and consider all of the evidence together;" and "when you do that, there can be no reasonable doubt of what happened on November 11th."  In the rebuttal closing argument, the prosecutor stated that the jury's "exercise" was "whether you can come up with a reasonable doubt or whether or not the case is proven."  These were proper comments on the reasonable doubt standard.  (See *People v. Romero* (2008) 44 Cal.4th 386, 416 ["In closing argument the prosecutor explained that the reasonable doubt standard asks

14

jurors to 'decide what is reasonable to believe versus unreasonable to believe' and to 'accept the reasonable and reject the unreasonable.' Nothing in the prosecutor's explanation lessened the prosecution's burden of proof"].)[4]

The prosecutor's arguments were not like those in *Centeno*, where the prosecutor displayed a diagram with a geographical outline of California and argued that, even after hearing inconsistent and inaccurate testimony, the jury would still have no reasonable doubt that the state was California. (*Centeno*, *supra*, 60 Cal.4th at p. 664.) The prosecutor here did not argue that, irrespective of the evidence, the jury must nevertheless find the brick wall constructed or the pile of sticks unbroken. The prosecutor instructed the jury to "look at . . . all [the bricks] together and see if you have a wall," and to determine whether "each stick" of evidence "fits together and when it fits together, it is unbreakable." These arguments did not mislead the jury as to the burden of proof or the reasonable doubt standard. Furthermore, the trial court properly instructed the jury as to the

_____

[4] Barrientos argues the prosecutor also improperly argued that the shooting "was a botched robbery or a drug deal," and that the defense had a duty to call Tanya to testify and to explain deficiencies in the evidence The record refutes these contentions. The prosecutor argued that "a stranger or drug dealer" had not committed the shooting, and stated that the jury "can't speculate about why [Tanya] is not here." The prosecutor also stated that he "ha[s] the burden of proof," but the jury could consider whether the defense had reasonably explained seemingly inculpatory evidence. These arguments were proper. (See *Centeno*, *supra*, 60 Cal.4th at p. 673 ["the prosecution can surely point out that interpretations [of the evidence] proffered by the defense are neither reasonable nor credible"].)

15

People's burden of proof beyond a reasonable doubt, and defense counsel specifically addressed the reasonable doubt standard and instruction during closing argument. There was no prosecutorial misconduct.[5]

---

[5] Barrientos contends the prosecutor's arguments denied him due process, and asserts in passing that his counsel's failure to object to the prosecutor's statements constituted ineffective assistance of counsel. (*Centeno*, *supra*, 60 Cal.4th at p. 674 [" '[a] defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel' "].)

For the above reasons, the prosecutor's arguments, even when considered cumulatively, did not deprive Barrientos of a fair trial, and Barrientos has not demonstrated that his counsel rendered ineffective assistance. (See *Hill*, *supra*, 17 Cal.4th at pp. 844-845 ["a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error"]; *People v. Rivas* (2013) 214 Cal.App.4th 1410, 1436 ["[a] claim of cumulative error is in essence a due process claim"]; *Centeno*, *supra*, 60 Cal. 4th at p. 674 [to prevail on ineffective assistance claim, defendant "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice"].)

16

**DISPOSITION**

The judgment is affirmed.

MCCORMICK, J.*

We concur:

PERLUSS, P. J.

FEUER, J.

---

\*     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17