Filed 3/12/25  P. v. Macias CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN MACIAS,<br><br>    Defendant and Appellant. | B333919<br><br>(Los Angeles County<br>Super. Ct. No. VA158250) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Adrian Macias (defendant) appeals from the judgment entered after he was convicted of first degree murder. Defendant contends the conviction should be reversed or reduced to second degree murder because insufficient evidence supported the jury's finding of premeditation and deliberation, and because he submitted postconviction evidence regarding the science of youthful brain development. Finding no merit to defendant's substantial evidence contention, and no appealable issue raised by defendant's youth contention, we affirm the judgment.

## BACKGROUND

Defendant was charged by amended information with murder in violation of Penal Code section 187, subdivision (a),[1] with the allegation he personally used a firearm in the commission of the murder within the meaning of section 12022.5, subdivision (a). It was also alleged pursuant to California Rules of Court, rule 4.421(a)(1) and (b)(1): the offense involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness; and that defendant engaged in violent conduct indicating a serious danger to society. A jury convicted defendant of first degree murder and found the firearm allegation true.

Defendant waived a jury trial on the aggravating factors. After considering the law and hearing the argument of counsel, the trial court found the aggravating factors true beyond a reasonable doubt. On September 13, 2023, defendant was

---

[1] All further unattributed code sections are to the Penal Code unless otherwise stated.

sentenced to life in prison with a minimum parole period of 25 years on the first degree murder conviction. As to the firearm enhancement, a consecutive high term of 10 years was added.

Defendant filed a premature notice of appeal from the judgment, which is deemed timely.

**Prosecution evidence**[2]

Jasmine Godinez testified that, while walking with her boyfriend Ernest Aguirre on February 25, 2020, around 2:45 p.m., they saw a friend. Aguirre approached the friend and stood at the apartment complex gate to speak to him from the sidewalk. Godinez walked about six feet further and waited for him. After a few minutes she saw Aguirre walking toward her when a man passed next to her "shoulder-to-shoulder" toward Aguirre, saying "ey" as he passed. The man, later identified as defendant, held a black semiautomatic gun with both hands and began shooting at Aguirre, who was holding a paint can and was unarmed except for a pocketknife attached to his waistband. Aguirre ducked, turned and ran to the school on the other side of the street. Defendant immediately followed and continued to fire in Aguirre's direction, while Godinez screamed at the shooter to stop. She heard six shots total and then the shooter was gone. Godinez ran across the street and found Aguirre unresponsive on the sidewalk with a gunshot wound to his head and his knees in a running position. Godinez identified surveillance footage clips from the video that captured the action she described as it was played before the jury.

---

[2]     Defendant presented no defense evidence.

3

Aguirre died as a result of one gunshot wound to the back of his head though he also sustained a gunshot wound to his upper thigh.

Following defendant's February 1, 2021 arrest, he was interviewed twice by Los Angeles Sheriff's detectives. In the first interview, defendant denied knowing Aguirre or being involved in the shooting. In the second interview, a short time later, defendant again denied involvement. As the detectives continued to urge defendant to tell the truth, he said, "Well, this guy was actually tryin [sic] to come after me." Defendant identified Aguirre in a photograph and said he felt threatened by Aguirre because he tried to shoot defendant once and could have killed defendant. Defendant admitted when he saw Aguirre, who seemingly did not recognize him, defendant walked up and started shooting. Aguirre lived down the street and defendant knew him by his nickname, Peewee. Defendant said, "He just made something so personal[.] . . . I felt like I had no choice," and, "There would be times where I'll see him and he'll try to . . . come up and do something." Defendant said Aguirre was confrontational, like "trippin" and "aggressive" on these prior occasions.

Defendant claimed he was not looking for Aguirre on the day of the shooting but just happened to see him and recognized him as someone who "could've taken my life away." Defendant told detectives he got out of the car armed with a gun, walked up to Aguirre, took the gun out and started shooting. Looking as though he had just recognized defendant, Aguirre started to run away, and defendant chased him while continuing to shoot. Defendant did not recall how many shots he fired, but he stopped shooting when the gun jammed, and he then "took off." Later,

4

defendant saw a video on Facebook of Aguirre lying on the ground after having been shot.

## DISCUSSION

## I.    **Substantial evidence supports first degree murder**

Defendant contends there was insufficient evidence to prove beyond a reasonable doubt the murder was premeditated and deliberate.

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "Although we assess whether the evidence is inherently credible and of solid value, we must also view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence."  (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 488.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. . . . Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. . . .  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction."  (*People v. Young* (2005) 34 Cal.4th 1149, 1181, citations omitted.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  "[B]ecause 'we *must* begin with the presumption that the evidence . . . *was* sufficient,' it is defendant, as the appellant, who 'bears the burden of

convincing us otherwise.'" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1430.)

"All murder that is perpetrated by means of . . . willful, deliberate, and premeditated killing . . . is murder of the first degree." (§ 189.) "'"A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. [Citation.] 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance."'" (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069.)

Defendant does not claim he had no intention to kill Aguirre, but that he acted rashly on impulse triggered by adrenaline and fear. Defendant contends the sighting of Aguirre was unexpected, and thus a reasonable jury could not conclude that the seconds that passed before the "actual" killing was a sufficient time to permit a careful weighing of the considerations for or against the action.

The only evidence suggesting the defendant's sighting of Aguirre was unexpected or that defendant acted rashly came from defendant's statements to detectives in the second police interview. In the first interview defendant denied knowing Aguirre or being involved in the shooting. In the second interview, defendant initially denied involvement and, later in the interview, claimed the victim was coming after him. A jury is not required to believe the defendant's statement to law enforcement. (*People v. Burney* (2009) 47 Cal.4th 203, 254.) As the jury found premeditation and deliberation beyond a reasonable doubt, it is apparent the jury did not believe defendant.

In addition, defendant supported his claim that just "seconds" passed before the "actual killing" by counting the time on the surveillance video which captured the shooting. He counts six seconds after he got out of the car and began firing the first shots toward Aguirre. Then five "or more" seconds until the shooting stopped, a total of 11 seconds or more. This suggests premeditation must occur for more than six seconds. If so, we disagree. "'''''Premeditation and deliberation can occur in a brief interval. "The test is not time, but reflection. 'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.'''''''" (*People v. Mendoza, supra*, 52 Cal.4th at p. 1069.)

Defendant agrees premeditation may be demonstrated by categories of evidence suggested by our Supreme Court in *People v. Anderson* (1968) 70 Cal.2d 15, 26–27 (*Anderson*), such as planning activity, preexisting motive, and manner of killing. (*People v. Mendoza, supra*, 52 Cal.4th at p. 1069.) There is no requirement that all three factors be established or that any one factor must be shown by direct evidence. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124–1125.) Here substantial evidence, including defendant's admissions, supported all three factors such that the jury could find premeditation beyond a reasonable doubt.

Planning may be reasonably inferred from the evidence defendant armed himself before the shooting. (See, e.g., *People v. Caro* (1988) 46 Cal.3d 1035, 1050; *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224.) Defendant recognized Aguirre, who lived near him and was well-known to him. The jury could reasonably infer defendant recognized Aguirre while still in the car. Indeed, defendant acknowledges he got out of the car armed

with a gun *after* he saw Aguirre and admitted he carried the gun as he approached Aguirre.

Second, defendant admitted a preexisting motive: he felt threatened and claimed Aguirre had previously tried to shoot him. Defendant claimed Aguirre was aggressive, confrontational, and made it "so personal." Defendant told detectives he felt he had no choice, as he recognized Aguirre as someone who "could've taken [his] life away."

The trial court instructed the jury on imperfect self-defense, the actual but unreasonable belief in the need to defend oneself from imminent danger of death or great bodily injury at the time of the killing, which could result in manslaughter.[3] But the jury rejected this defense. Presumably the jury reasonably inferred the consideration defendant weighed, before he got out of the car, to kill Aguirre before Aguirre decided to kill him. Defendant essentially asks us to accept his proffered inferences and reject the reasonable inferences supporting the jury's verdict. This we may not do. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.)

Finally, the manner of the killing gives rise to a strong inference that defendant premeditated killing Aguirre before getting out of the car. Defendant admitted he exited the car armed with a gun, approached Aguirre, immediately started shooting as Aguirre ran away, and chased after him while continuing to shoot. Defendant stopped shooting at Aguirre only when the gun jammed. "The firing of multiple shots at close range strongly supports a finding of premeditation and

---

[3] See generally, *People v. Elmore* (2014) 59 Cal.4th 121, 134–137.

8

deliberation." (*People v. Casillas* (2021) 65 Cal.App.5th 135, 152.) In addition, an inference of premeditation and deliberation arises where the manner of killing is a close-range shooting without any provocation or evidence of a struggle. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295.)

Defendant cites testimony from the medical examiner, Dr. Ukpo, that "close range" is generally considered between one to three feet from the barrel of the gun to the skin of the victim. Based on the gunpowder on Aguirre's body, he testified it could have been more than three feet between the victim and the shooter unless there was something blocking the skin from gunpowder, such as clothing or hair. Dr. Ukpo was qualified as a medical expert and gave a medical opinion regarding cause and circumstances of death. He was not a legal expert and did not offer a legal opinion as to the meaning of "close range." The California Supreme Court, on the other hand, has held "close range" for the purpose of finding premeditation can include six shots fired from up to 25 feet away. (See *People v. Villegas, supra*, 92 Cal.App.4th at pp. 1224–1225.)

Nevertheless, Godinez testified she was about six feet away from Aguirre on the sidewalk when he was walking toward her. She saw defendant pass her "shoulder to shoulder" as he moved toward Aguirre while holding a semiautomatic gun. As defendant passed Godinez while Aguirre walked toward her, defendant would have been within about six feet of Aguirre when he started shooting. As the People note, if Aguirre was no longer in close range when the fatal shot entered his head, it was only because he was running away as defendant continued to fire.

The remainder of defendant's argument regarding the *Anderson* factors of planning, motive, and manner of killing[4] consists of comparisons with other cases, which found or did not find premeditation under facts defendant points to as existing or not existing. As to those facts defendant finds comparable to facts in this record, he draws his own inferences, different from those reasonable inferences that exist here. As substantial evidence supports the first degree murder conviction, we reject defendant's proffered inferences. (See *People v. Watkins, supra*, 55 Cal.4th at p. 1020.) "To conclude there was 'no evidence of X' does not constitute a finding of 'not X.' This is because '[a]n absence of evidence is not the equivalent of substantial evidence.' [Citation.] 'No finding can be predicated on the absence of evidence.'" (*People v. Superior Court* (*Valenzuela*) (2021) 73 Cal.App.5th 485, 498; see *People v. Thomas* (1992) 2 Cal.4th 489, 552.)

Moreover, a comparison between facts of different cases to demonstrate the insufficiency of evidence is not useful, as each case necessarily depends on its own facts. (*People v. Thomas, supra*, 2 Cal.4th at p. 516.) This is especially so when, as here, the issue is the defendant's state of mind. (See *People v. Mendoza, supra*, 52 Cal.4th at p. 1075.) We thus do not discuss such cases cited by defendant.

## II.  Request for consideration of defendant's youth

Defendant contends the judgment should be reversed or reduced to second degree murder because substantial evidence showed the killing resulted from youthful rashness and impulsiveness, not premeditation and deliberation. Defendant

---

[4]     See *Anderson, supra*, 70 Cal.2d at pages 26–27.

10

acknowledges the evidence he deems substantial was not before the trial court during trial, but is contained in his *Franklin* report, filed after his conviction. (See generally *People v. Franklin* (2016) 63 Cal.4th 261.) Defendant's argument and authorities in support of his contention relate primarily to the science of the adolescent and young adult brain. However the question of defendant's youth and its bearing on the mental state required for first degree murder was not at issue at trial.

As relevant here, section 1237, subdivision (a) permits a felon to appeal from a final judgment of conviction, a sentence, an order granting probation, as well as an order after judgment affecting the substantial rights of the appellant. Both subdivision (a) and (b) allow the appellate court to review any order denying a motion for a new trial or an after judgment order affecting a party's substantial rights. In his statement of appealability defendant lists the only order appealed as "a final judgment of conviction after jury trial and is authorized by Penal Code section 1237, subdivision (a)." (Fn. omitted.) Defendant points to nothing in the trial court record such as an order or request for relief that might relate to the science of the youthful brain and is thus made appealable by section 1237, subdivision (a).

Nor has defendant cited authority or made a reasoned legal argument supporting his contention this issue may be raised for the first time on appeal based upon evidence *not presented* at trial and without appealing from the sentence imposed. Failure to develop an argument or cite any authority in support of a contention ordinarily results in the forfeiture of the issue on appeal. (See *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2.) In addition, "[p]erhaps the most fundamental rule of appellate

11

law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)  Defendant has failed to identify any error here.

As defendant has failed to show appealability of his contention or error, we will not address the subject.

## DISPOSITION

The judgment is affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
RICHARDSON, J.

12